79 F.2d 187 (1935)
In re ALLIED OWNERS CORPORATION.[*]
RECONSTRUCTION FINANCE CORPORATION
v.
CALLAGHAN et al.
No. 499.
Circuit Court of Appeals, Second Circuit.
July 22, 1935.
*188 Debevoise, Stevenson & Plimpton, of New York City, and Max O'Rell Truitt, of St. Louis, Mo. (E. W. Debevoise, William E. Stevenson, and D. F. McGlinchey, all of New York City, of counsel), for appellant Reconstruction Finance Corporation.
Goldwater & Flynn, of New York City (Monroe Goldwater, Nathan Goldstein, and Oliver T. Cowan, all of New York City, of counsel), for trustee in bankruptcy in reorganization.
Robert P. Levis, of New York City, for Allied Owners Corporation.
Cullen & Dykman, of Brooklyn, N. Y. (Maximilian Moss and John B. Bennett, both of Brooklyn, N. Y., of counsel), for William M. Greve.
Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.
AUGUSTUS N. HAND, Circuit Judge.
The questions raised by these appeals all relate to allowances which the court in charge of a proceeding for the reorganization of Allied Owners Corporation under section 77B of the Bankruptcy Act (11 US CA § 207) ordered to be paid to persons engaged in a prior bankruptcy proceeding of that company. On August 8, 1933, the company was adjudicated a bankrupt on its voluntary petition. Stephen Callaghan and Percival E. Jackson became trustees in bankruptcy on August 25, 1933, and William M. Greve became a trustee on September 14, 1933. The delay between the date of his election and the date of taking office was due to his rejection by the referee because of a supposed disqualification. After the referee's ruling, he employed Cullen & Dykman as his personal counsel and was reinstated by the court. On June 22, 1934, the bankruptcy proceedings were superseded by proceedings for reorganization under section 77B, and the former trustees in bankruptcy were appointed trustees in reorganization. Messrs. Goldwater & Flynn were attorneys for the trustees in each proceeding. The tenure of the trustees in bankruptcy and their counsel lasted about ten months, and the amounts to which they are entitled as compensation for services during that period are in dispute on the present appeal. There is also before us the question of the compensation of Robert P. Levis, the attorney for the bankrupt, of Cullen & Dykman, who performed legal services in securing the reinstatement of William M. Greve as trustee, and of William Stitt, who as referee was in charge of the bankruptcy proceeding.
The referee awarded compensation to the persons engaged in the bankruptcy proceeding other than himself, and submitted to the District Judge the question of the amount of his own compensation. The judge entered an order fixing the compensation of the referee at $25,000 and approving the awards made by the latter to the other persons. He fixed them at the same amounts except in the case of the three trustees in bankruptcy, whose award he raised from $60,000, allowed by the referee, to $90,000. After this was done, the same *189 judge made an order in the section 77B proceeding directing the payment of these allowances out of the estate of the debtor. As finally ordered, they were as follows:

 To the trustees in bankruptcy ..... $90,000.00
 To Goldwater & Flynn, attorneys
 for the trustees in bankruptcy ... 75,000.00
 To Robert P. Levis, attorney for
 bankrupt ......................... 10,000.00
 To Theodore Stitt, referee ........ 25,000.00
 To Cullen & Dykman, attorneys
 for William M. Greve, for
 services and disbursements prior
 to his qualifying as trustee ..... 2,474.35

The Reconstruction Finance Corporation, a large creditor of Allied Owners Corporation, seeks by this appeal to have the allowances to the trustee, their attorneys, and the attorney for the bankrupt reduced, and those to the referee and Messrs. Cullen & Dykman entirely eliminated.
The appellant objects to the allowance to the trustees not only because it is excessive, but because their compensation was governed by section 48a of the Bankruptcy Act (11 USCA § 76 (a), and, under that section, they were limited to "such commissions on all moneys disbursed or turned over to any person, including lienholders, by them, as may be allowed by the courts, not to exceed 6 per centum on the first $500 or less, 4 per centum on moneys in excess of $500 and less than $1,500, 2 per centum on moneys in excess of $1,500 and less than $10,000. * * *" They may also, under section 48e of the act (11 US CA § 76 (e), receive an additional 1 per centum if, as here, they conduct the business. If section 48a and section 48e had been applied, the trustees in bankruptcy would have been limited to the statutory fees on $731,425.57 cash turned over by them, or $14,628.50. But it is argued that their compensation was subject to no such limitations and that the language of section 77B (i) of the act (11 USCA § 207 (i) leaves the amount of compensation for services in the prior bankruptcy proceeding to the discretion of the judge in the reorganization proceeding, guided only by the "rule of reason." In our opinion, however, section 48a fixes the bounds of the fees which the trustees in bankruptcy can claim.
We have discussed the application of section 77B (i) in Matter of New York Investors, Inc. (C. C. A.) 79 F.(2d) 182, so far as it relates to the fixing of fees in a prior equity receivership. The principles involved where the prior insolvency proceeding is in bankruptcy are the same. Section 77B (i) provides that, if a receiver or trustee has been appointed by a federal, state, or territorial court and if thereafter a reorganization proceeding under section 77B supervenes, "the trustee or trustees appointed under this section, or the debtor if no trustee is appointed, shall be entitled forthwith to possession of and vested with title to such property, and the judge shall make such orders as he may deem equitable for the protection of obligations incurred by the receiver or prior trustee and for the payment of such reasonable administrative expenses and allowances in the prior proceeding as may be fixed by the court appointing said receiver or prior trustee. * * *" The foregoing section, in our opinion, requires that the prior insolvency court shall fix allowances and the reorganization court shall provide for their payment in so far as they are found to be "reasonable." It seems quite unlikely that such a provision, made, as we believe, in order that the reorganization court might benefit by the experience of the prior court and its familiarity with the details of the business, was intended to leave the prior court free (within its statutory limitations) to fix conclusively any allowance it might deem reasonable. No such freedom had existed where ordinary bankruptcy had succeeded a state receivership. Taylor v. Sternberg, 293 U. S. 470, 55 S. Ct. 260, 79 L. Ed. 599; Gross v. Irving Trust Co., 289 U. S. 342, 53 S. Ct. 605, 77 L. Ed. 1243, 90 A. L. R. 1215; Hume v. Myers (C. C. A.) 242 F. 827. We think it plain that the words "equitable" and "reasonable" were intended to mean "reasonable" in the eyes of the reorganization court, and were to serve only as a check by the section 77B court on payments which might affect the proposed reorganization unfairly. If the parties whose compensation was fixed by the prior insolvency court felt aggrieved, they would seem to have had an obvious remedy by an appeal from the court which had fixed their compensation.[1] Under sec-awarding compensation in excess of limition *190 77B (i), the reorganization court is given power to pay allowances which have been fixed by the prior court only to the extent that they are found reasonable. Nothing in the language of the subdivision suggests the removal of any restriction which may exist upon the prior court in the determination of allowances. Indeed, it is impossible to imagine that court tations imposed by a statute to which its orders are made subject. It seems equally unlikely that the reorganization court should be empowered by mere implication to make allowances for services by the agencies of another court which the statutes governing the action of that court forbid.
Judge Goddard in Matter of Paramount Publix Corp. (D. C.) 12 F. Supp. 16, December 10, 1934, held that section 77B of the Bankruptcy Act did not enlarge the fees which might be granted under section 48a to trustees in bankruptcy, and we think his decision was entirely correct. In Re National Dept. Stores, Inc., supra, Judge Nields recently held that under section 77B (i) the reorganization court had no power to revise allowances fixed by the prior court. With all due respect, we cannot agree with an interpretation of the subdivision that would seem to make the words "equitable" and "reasonable" mere exhortations to the prior insolvency court which could result in no effective control by the reorganization court over excessive allowances. We believe that it was the purpose of Congress to lessen the cost of insolvency proceedings which have long been regarded as too great. Cf. remarks of Cardozo, J., in Realty Associates Securities Corp. v. O'Connor, 295 U. S. 295, 55 S. Ct. 663, 79 L. Ed. 1446.
It is argued that section 77B (k) of the act (11 USCA § 207 (k) makes section 48a inapplicable to the prior bankruptcy proceeding. This is plainly unsound. Subdivision (k) in terms relates only to "proceedings instituted under this section [77B]." It provides that certain sections of the Bankruptcy Act, including section 48 (11 USCA § 76), shall not "apply to proceedings instituted under section 77B [this section] unless and until an order" of liquidation has been entered. This means that the judge fixing fees for services in a section 77B proceeding shall not be limited by section 48, and not that the bankruptcy judge in fixing fees in that proceeding is not so bound.
It has been suggested that the trustees might be allowed compensation larger than $14,628.50 by calculating their commissions on the value of property as well as "moneys disbursed or turned over to any person," upon the analogy of In re Toole (D. C.) 294 F. 975, and In re Kessler (unreported decision in the Southern District of New York, July 16, 1918). But neither of these decisions was made upon facts like the present, and, if sound, each is limited to cases where it can be said that there is a constructive disbursement of moneys by turning over property at an agreed valuation. Here the commissions had to be figured upon cash disbursed. In re Detroit Mortgage Corp. (C. C. A. 6) 12 F.(2d) 889, certiorari denied Security Trust Co. v. De Land, 273 U. S. 713, 47 S. Ct. 107, 71 L. Ed. 854; American Surety Co. v. Freed (C. C. A. 3) 224 F. 333. While we should allow a substantially larger compensation if we were at liberty to disregard section 48a, the amount awarded by the District Court was plainly excessive. The services of the trustees only lasted ten months, were in many respects preliminary to a reorganization, and were far less burdensome than those of their counsel. If the reorganization succeeds, they will be entitled to substantial compensation in the 77B proceeding.
We see no reason under present circumstances to suspend the payment of allowances to either the trustees or their counsel for work which has been completed. We award to the former $14,628.50, instead of the $90,000 granted by the District Court.
The next item to be considered is the compensation of Messrs. Goldwater & Flynn, the attorneys for the trustees in the bankruptcy proceeding. The value of the assets of the bankrupt based on the statement of its accountants as of December 31, 1933, was $18,161,470.38. This, of course, did not represent the realizable value at the date of bankruptcy, and the properties were subject to mortgages amounting to about $11,662,000. Among the principal properties of the estate were seven *191 moving picture theaters and a note of Ringling Bros. in which its participation interest was $828,000. In addition to this, there was cash on deposit in various banks and trust companies aggregating $341,414.22. The bankrupt was a subsidiary of New York Investors, Inc., which was in the hands of receivers in equity, and as such was involved in its complicated affairs. One of the most important matters that the attorneys had to attend to arose out of two actions pending on behalf of the bankrupt to recover monthly installments of purchase price on three of the theater properties from Loew's Theater & Realty Corporation and Loew's, Inc. The total amount sued for was nearly $300,000. Many complicated questions of law and fact were involved in these litigations in which answers and counterclaims had been interposed, and the cases were prepared for trial by Messrs. Goldwater & Flynn. They were finally settled, shortly after the trustees under section 77B were appointed, by means of a guaranty by Loew's, Inc., of the aggregate amount payable under the installment contracts. Undoubtedly the settlement was largely due to the preparation of the cases for trial, and the guaranty of some $12,000,000 of future installment payments is said to be good. Claims for about $23,000,000 prepared by the attorneys were asserted by the trustees against Paramount Publix Corporation based on alleged damages because of breach by the latter of contracts for the purchase of theaters. The claims against Paramount were settled long after the termination of this proceeding. The Manufacturers Trust Company, which was trustee under a trust deed that secured a large bond issue, was dissuaded from foreclosing mortgages covering the theaters, and this made it possible to proceed with the actions against Loew's Theater & Realty Corporation and Loew's, Inc., and finally to settle them. These and many other important matters, such as litigation over the Ringling note, requiring skill and experience, are said to have occupied one or more of the partners in Goldwater & Flynn and two of their legal assistants for some 4,508 hours, of which 3,023 were those of their assistants. Many of the things done by these lawyers, as is always the case, were routine matters; many were matters of large importance; many were of a sort preliminary to the reorganization, which has not yet been completed. We think $50,000 is a reasonable compensation for these attorneys, and we award that amount, instead of $75,000, to which is to be added their disbursements of $1,247.80 directed to be paid by the District Judge.
The attorney for the bankrupt was allowed $10,000 for his services. His most important services were advising the corporation about going into bankruptcy, preparing the petition, schedules, amended schedules, and notices to banks, asking for the immediate appointment of a trustee, and taking steps, that were evidently successful, to prevent the expense of a receiver. These things were for the benefit of the estate and properly chargeable to it. His other services in attending creditors' meetings and examinations under section 21a of the act (11 USCA § 44 (a), supporting the proceeding of Mr. Greve for reinstatement as trustee, acquainting the trustees and their counsel with the previous business of the bankrupt, making arguments in connection with the Ringling note, arguing against the attempted foreclosure by the Manufacturers Trust Company and Realty Associates, Inc., negotiating with the Loew interests, and filing the petition under section 77B, are not matters for which compensation can properly come from the bankrupt estate. Undoubtedly the preparation of the schedules was a difficult matter requiring much time, labor, and skill, but an allowance of $5,000 is, in our opinion, adequate, if not liberal, compensation, for all the services chargeable to the estate. We award that amount to the attorney for the bankrupt, instead of the $10,000 granted by the District Court.
The award of $25,000 to the referee was clearly erroneous. We have already shown that the reorganization court was without power to increase allowances fixed by the prior court and that the prior court was limited by the provisions of the Bankruptcy Act. Under section 40a of that act (11 USCA § 68 (a), referees are only entitled to "a fee of $15 * * * in each case * * * and 25 cents for every proof of claim filed for allowance * * * and from estates which have been administered before them 1 per centum commissions on all moneys disbursed to creditors by the trustee. * * *" Under section 40a, the referee here was limited to a fee of $15 and his filing fees, and under section 72 of the act (11 USCA § 112) could not "in any form or guise receive * * * any other or further compensation."
*192 The award of $2,474.35 to Cullen & Dykman cannot stand. They performed legal services for Mr. Greve in procuring his reinstatement after the referee declined to approve his election by the creditors. But he was not trustee at the time the services were performed. They were performed for him personally, and, though they doubtless resulted in a benefit to the estate when the selection of a good trustee was thereby secured, it was not the sort of benefit which can be the basis of a charge against the fund in the hands of the trustees. The situation resembles that in Weed v. Central of Georgia Ry. Co. (C. C. A. 5) 100 F. 162, 167, where an allowance was sought by counsel for an intervening creditor for securing the appointment of a coreceiver. The application was denied, the court saying: "That kind of service is certainly such a service as should be paid for by their clients."
The orders are modified as to Stephen Callaghan, Percival E. Jackson, William M. Greve, Goldwater & Flynn, and Robert P. Levis, and reversed as to Theodore Stitt and Cullen & Dykman, in accordance with this opinion.
NOTES
[*] Writ of certiorari denied 56 S. Ct. 307, 80 L. Ed. ___.
[1] See decision in Re National Department Stores, Inc. (D. C. Del. 1935) 11 F. Supp. 101, where Judge Nields, as judge of the reorganization court, withheld an order for payment of allowances granted by the Pennsylvania District Court until it appeared whether an appeal had been taken or, if taken, disposed of.