### IN RE KELLY SPRINGFIELD TIRE CO.

No. 8139.

District Court, D. Maryland.

Nov. 22, 1935.

726

See, also, 10 F.Supp. 414.

Venable, Baetjer & Howard, of Baltimore, Md. (by Harry N. Baetjer and Stuart S. Janney, Jr., both of Baltimore, Md.), for trustees.

Gleason, McLanahan, Merritt & Ingraham, of New York City (by Scott Mc-

Lanahan, of New York City), for debtor.

Eben J. D. Cross, of Baltimore, Md., and Chaffee, Dawson & Shealy, of New York City (by Reed B. Dawson, of New York City), for Braden Preference Stockholders' Committee.

Stern & McGivney, of New York City (by Walter T. Stern, of New York City), for Stratton Noteholders' Committee.

Engelhard, Pollak, Pitcher, Stern & Clarke, of New York City (by Stanley Clarke, of New York City), for Levy Noteholders' Committee.

Alfred F. Ritter, of Brooklyn, N. Y., for Guttman Preference Stockholders' Committee.

Merritt Lane, of Newark, N. J., for receivers appointed by Court of Chancery of New Jersey.

Moses & Singer, of New York City (by Henry Singer, of New York City), for Public Nat. Bank & Trust Co. of New York.

Edwin A. Falk, of New York City, for receivers appointed by the United States District Court for the Southern District of New York and Joseph R. Truesdale, counsel.

Swiger, King & Chambers, of New York City (by Robert N. King, of New York City), for Common Stockholders' Committee.

William Harris, of Newark, N. J., White & Case, of New York City (by W. S. Tozer, of New York City), Pitney, Hardin & Skinner, of Newark, N. J. (by Waldron M. Ward, of Newark, N. J.), Krause, Hirsch & Levin, of New York City (by George C. Levin, of New York City), Lindabury, Depue & Faulks, of Newark, N. J. (by James E. M. Tams, of Newark, N. J.), Austrian & Lance, of New York City (by Saul J. Lance, of New York City), David A. Robb and Albert A. Doub, both of Cumberland, Md., and Harry O. Levin, of Baltimore, Md., on their own behalf.

CHESNUT, District Judge.

We have now reached the final stage of the matter of the reorganization of the Kelly Springfield Tire Company—the determination of the amount of allowances of certain claims for administration expenses. Notice of a hearing on these claims was duly given and on November 6 and 7, 1935, the matter was heard in Court for two full days. Numerous claimants appeared and testified in person with respect to the allowances requested, and counsel for various parties were heard. The testimony was stenographically reported and can be made available for all interested.

The amended plan of reorganization was finally confirmed on July 5, 1935, and no appeal therefrom was perfected and the plan has been consummated. By Section 12 (d) of the plan the sum of $251,227.28 was set aside for the payment of certain administrative expenses, taxes, disputed, unliquidated or unknown claims of creditors, and other miscellaneous claims or expenses. From the fund so reserved various claims other than administrative expenses have been paid from time to time so that the amount thereof now remaining is about $167,000, from which amount it is further necessary to reserve about $10,000 for certain still unpaid taxes and minor miscellaneous expenses still unpaid or likely to accrue, including possibly $2,500 for costs in the prosecution of a suit for the recovery of Federal taxes now claimed in the amount of about $2,000,000, which, to the extent recovered, will inure to the benefit of the common stockholders. The fund available for administration expenses to the extent required is, therefore, not more than $157,000.

By paragraph 13 of the amended plan it was provided:

"In the event the cash in the hands of the trustees after determination of all sums distributable under this plan as hereinabove outlined, exceeds the amount of cash allocated by virtue of the bases heretofore set forth, then any such overplus shall be ratably distributed to the common shareholders."

In the interest of the common shareholders each of the claims now presented for consideration has been individually and particularly considered to determine its reasonableness and to preserve for the benefit of the common stockholders any equity that there may be in this fund.

The administration expenses which must now be determined and allowed are not only those incident to the reorganization of the Company in the proceedings in this Court but include also allowances which have heretofore been made

in three prior receivership proceedings affecting the Company and all pending at the time of the assumption of jurisdiction by this Court: (1) In the Chancery Court of New Jersey; (2) in the District Court of the United States for the Southern District of New York, 10 F.Supp. 419; (3) in the Circuit Court for Allegany County in the State of Maryland. The allowances heretofore made in these other Courts and the allowances now requested for administration expenses in this Court may be classified as follows: Receivers and counsel in New Jersey, New York and the Maryland State Court, and in this Court (a) trustees and their counsel; (b) bank depositories for the securities involved in the reorganization; (c) committees of noteholders, preferred stockholders and common stockholders and their counsel. In all there are 41 separate claims. The allowances which have heretofore been made in the receivership cases by other Courts are as follows:

1. In the New Jersey Court in the aggregate amount of $87,646.12.

2. In the District Court for the Southern District of New York in the aggregate amount of $26,155.74.

In the Circuit Court for Allegany County, Maryland, in the aggregate amount of $12,170.

In addition thereto, for expenses in this Court alone the bills rendered by six separate banks or trust companies for services as depositories of securities aggregate approximately $23,000; and in further addition thereto there must be reasonable allowance in this Court for the services of trustees and their counsel, and, to the extent found necessary and reasonable, to committees for security holders and their counsel. The receivership proceedings in the several other Courts were of about two months' duration. In this Court the services performed have been over a period of approximately six months. For the most part, those who have performed services in the administration of the estate in this Court have not specified the amounts requested but have left it subject to the discretion of the Court. It is evident, however, that the total amounts of all administration expenses so requested very greatly exceeds the sum available for payment.

At the inception of the hearing on November 6, a brief summary was made of the affairs of the Kelly Springfield Tire Company and an outline given of its reorganization; and also there was made a statement of the general principles of law which the Court deemed applicable in the present situation with regard to the determination of the allowances now requested. For convenience the main considerations may be here repeated. The authority for making such allowances and the directions with regard thereto contained in section 77B of the Bankruptcy Act (11 U.S.C.A. § 207) under which this proceeding has taken place, are as follows: With respect to the allowances in prior receivership proceedings subsection (i) of the statute (11 U.S.C.A. § 207 (i) provides as follows:

"And the judge shall make such orders as he may deem equitable for the protection of obligations incurred by the receiver or prior trustee and for the payment of such reasonable administrative expenses and allowances in the prior proceeding as may be fixed by the court appointing said receiver or prior trustee."

■ It has recently been held by the Circuit Court of Appeals for the Second Circuit that under this statutory provision the Judge of the District Court in the reorganization proceedings under 77B must finally determine what are reasonable allowances in prior legal proceedings; and the amount of the allowances made in such prior proceedings are not necessarily conclusive. In re New York Investors, Inc., 79 F.(2d) 179 (C.C.A.2); In re New York Investors, Inc., 79 F.(2d) 182 (C.C.A.2); In re Allied Owners Corp., 79 F.(2d) 187 (C.C.A.2). This same view of the matter had previously been announced by this Court at a prior hearing in this same case.

■ With respect to allowances for administration expenses in this Court where the reorganization has taken place, the statute in subsection (c) (9), 11 U.S.C.A. § 207 (c) (9) provides that the judge "may allow a reasonable compensation for the services rendered and reimbursement for the actual and necessary expenses incurred in connection with the proceeding and the plan by officers, parties in interest, depositories, reorganization managers and committees or other representatives of creditors or stockholders, and the attorneys or agents of any of the aforegoing and of the debtor, but appeals from orders fixing such allowances may be taken to the Circuit Court of Appeals inde-

pendently of other appeals in the proceeding and shall be heard summarily."

It will be noted that the classes of parties or persons to whom compensation for services and reimbursement for expenses may be allowed is very comprehensive but nevertheless compensation for services "must be reasonable" and reimbursement is limited to "actual and necessary expenses incurred in connection with the proceeding and the plan." In interpreting what is "reasonable" compensation for services it is the view of the judges of this Court, as heretofore expressed in this and other cases, that, as the purpose of this new section of the bankruptcy law is for relief of financially embarrassed debtors, its spirit should be considered that of economy in administration. Pursuant thereto it has been the announced policy of this Court that the amount of such allowances must be *moderate* rather than *liberal*, in the interests of the parties affected, but nevertheless *just* allowances must be made to those who have performed services which have inured to the benefit of the parties in interest.

Circuit Judge Augustus N. Hand, speaking for the Court of Appeals for the 2nd Circuit, in Re New York Investors, Inc., 79 F.(2d) 182, 185, said:

"The Supreme Court has given notice on more than one occasion that receivers and attorneys engaged in the administration of estates in the courts of the United States and in litigations affecting property within the jurisdiction of those courts should be awarded only moderate compensation, and that many of the allowances heretofore awarded have been too high."

See, also, Newton v. Consolidated Gas Co., 259 U.S. 101, 42 S.Ct. 438, 66 L.Ed. 844; United States v. Equitable Trust Co., 283 U.S. 738, 51 S.Ct. 639, 75 L.Ed. 1379; Realty Associates Security Corp. v. O'Connor, 295 U.S. 295, 55 S.Ct. 663, 79 L.Ed. 1446. Section 3 of the same Act of Congress which enacted section 77B (Public No. 296, 73rd Congress H.R. 5884), provided that in the administration of the Bankruptcy Act of July 1, 1898 "the compensation allowed a receiver or trustee or an attorney for a receiver or trustee shall in no case be excessive or exhorbitant, and the court in fixing such compensation shall have in mind the conservation and preservation of the estate of the bankrupt and the interests of the creditors therein." 11 U.S.C.A. § 76a.

And as this is the policy which has been applied in such cases in determining what are reasonable allowances for services in this Court, it seems proper to apply the same principles in the determination of what are reasonable administration expenses and allowances in prior receivership proceedings. I come now to the application of these principles to the numerous claims in this case. But first a brief restatement of the general financial condition of the Kelly Springfield Tire Company and of the litigation affecting it should be made.

The Company is a New Jersey corporation organized about 35 years ago, with a very large and substantial tire manufacturing plant in Cumberland, Maryland, but with its executive offices, in December, 1934, in New York City. As of March 1, 1935, it had assets of the book value of over $11,000,000 with quick liabilities of approximately only $500,000, and its capitalization was as follows: (1) Ten-year 6% notes $2,611,500; (2) $6.00 cumulative preferred stock of no par value of which 49,952 shares were outstanding with dividends in arrears since January 1, 1933; and (3) common stock of the par value of $5.00 per share with 741,206 shares outstanding. The Company was not insolvent but for approximately ten years past it had sustained an average annual operating loss of about $1,000,000; and the economic conditions prevailing in the rubber tire industry were such that there was no prospect of improving operating results. For some months prior to December, 1934, there was very serious internal dissension among the stockholders and noteholders of the Company with respect to the personnel and policy of management. A large number of the common stockholders were endeavoring to effect a complete change in management. Thereupon a group of noteholders, substantial in amount, brought a proceeding in the Chancery Court of New Jersey for the appointment of receivers with the ultimate possibility of liquidation or reorganization. Three receivers were appointed by the Vice-Chancellor, Messrs. O'Regan, Maguire and Burke, the latter, on December 19, 1934, president of the corporation. On January 15, 1935,

Mr. Maguire resigned by reason of his health, and a Mr. Ferguson was appointed and as additional receiver, a Mr. Weinstein was added. Apparently certain common stockholders interpreted the proceeding in New Jersey as hostile to their interests and on December 29, 1934, applied for appointment of receivers in the United States District Court for the Southern District of New York. The Court there appointed Messrs. Weinstein, O'Shaughnessy and, on January 15, 1935, Mr. O'Regan, who had previously been appointed in the New Jersey Court, was added as an additional receiver in New York, and Mr. Weinstein who had originally been appointed as receiver in New York was appointed as additional receiver in New Jersey. The New York proceedings were originally instituted as a primary receivership but on contest of the New Jersey receivers, was shortly thereafter designated as an ancillary receivership. About the same time an ancillary receivership proceeding was instituted in the Circuit Court for Allegany County, Maryland, where Messrs. Burke and Finan, the latter a prominent citizen of Cumberland, Maryland, were made receivers with Mr. Maguire, later succeeded by Mr. O'Regan. The friction between the New York and the New Jersey receivers and complications resulting from three separate current receiverships were necessarily very disadvantageous to the conduct of the business of the corporation. It was obviously desirable to concentrate the management in one Court jurisdiction. On February 23, 1935, holders of $3,000 of notes filed a proceeding under 77B in the Southern District of New York. A few days later, February 28, 1935, the debtor corporation itself filed a similar proceeding here. After full hearing this Court assumed jurisdiction and later, by order in the Southern District of New York, the creditors' petition there was transferred to this Court.

In accordance with customary procedure in this Court, after notice to parties in interest and full hearings, Messrs. Burke and Finan were appointed and confirmed as trustees with power to continue the operation of the business and in due course thereafter a plan of reorganization was filed which, after hearing, was amended and after further hearing was subsequently confirmed on July 5, 1935, and has been executed. In the inception of the proceeding here there was much contrariety of view and apparent conflict of interest between the noteholders, preferred stockholders and common stockholders. For a long time it seemed almost hopeless to effect a reconciliation of these divergent interests. Finally, however, as a result of numerous and protracted hearings and concessions made by the respective groups, the requisite percentage of approval of the several classes in interest was obtained and the plan was found to be fair, equitable and feasible and was confirmed. This brief outline will furnish some idea of the complexity of the situation which existed, the contrariety and conflict of interests and the inherent difficulties in the situation, and will afford some explanation now of the very numerous and large claims for allowances which have been made. Under the plan the equity in the reserved fund, if any, goes to the common stockholders, and it would appear therefrom that the total expenses are being imposed upon that class of security holders. While this is true in form it is hardly true in substance because the plan as finally agreed upon represented very substantial concessions made to the common stockholders by the noteholders and preferred stockholders. Thus the noteholders instead of receiving the payment of their claims in full to which they would have been entitled upon liquidation, and for which assets of the company were plainly sufficient, accepted 80% only of the par value of their notes. The total sum realized for the benefit of the security holders by the plan of reorganization approximated $4,500,000. If liquidation had resulted, after the payment of the notes at par value, the next claim on the fund would have been the payment to the preferred stockholders which were entitled in liquidation to $100 per share plus accrued and unpaid dividends; but who accepted in the reorganization, payment in cash and securities estimated to be approximately $21.00 per share for the preferred stock. This left for distribution to the common shareholders more than $1,000,000. If the company had been liquidated rather than reorganized under the plan, it is very improbable that common stockholders would have received any distributive share at all.

The asset of largest book value was the plant which had no substantial value except to the corporation as a going concern, and the prospects of future business held out no hope for future profits but

rather only continued operating losses. Liquidation in some form was necessary to save further loss. So that the present payment of administration expenses from the fund is in form but is hardly to be regarded in substance as imposed upon the common stockholders, but rather upon all classes as a feature of the plan of reorganization.

Coming now to a consideration of the allowances which have been made in the three receivership cases, it is found that the aggregate allowances made therein for compensation to receivers and counsel is in the amount of $63,980.45 for receivers, and $61,991.41 for counsel, a total of $125,971.86. In considering the reasonableness of these allowances it must be borne in mind that the respective receiverships lasted for a period of about two months only and the essential activity therein was principally a preservation of the *status quo*. The New Jersey receivership was under a statute which it is said would have permitted ultimately a liquidation or reorganization of the corporation but the almost immediately ensuing receivership in New York where the executive offices of the company were situated and the ancillary proceeding in Allegany County, Maryland, where the plant was situated, apparently rendered it impossible for the New Jersey receivership to be effective in producing any results. And the conflicting aims and interests of the dominant parties in the New Jersey and New York receiverships necessarily created a situation which prevented any substantial progress in the affairs of the corporation. The Allegany County, Maryland, receivership was merely ancillary to that in New Jersey. Under these conditions it is not surprising that these receiverships resulted in no constructive benefit to the company but in substance only enabled the conflicting interests to preserve their respective situations in the controversy. From the standpoint of duration in point of time and lack of constructive results, it would seem apparent that the total allowances that have been made are in the aggregate unreasonably large. It is, however, necessary to consider the allowances in each receivership separately in detail.

First with regard to the allowances made in the Southern District of New York. This proceeding was originally filed as a primary receivership, despite the then pending primary receivership in New Jersey, but it was subsequently converted into an ancillary receivership. It was brought in the interests of the common stockholders as opposed to that of the noteholders. The dominant inspiration for the suit seems to have been to avoid forced liquidation of the company which it was thought would have been directly in the interests of the noteholders by the acceleration of the maturity of their notes and their payment in full at par value when their market value was only about $50. To advisedly act, in view of this apparent situation, it would appear that the Court found it necessary to appoint not only an operating receiver to take charge of the executive offices of the company in New York but to appoint in addition thereto a business consultant to determine the real condition and operating prospects of the company. There was also active litigation as to the status of the receivership brought about by the opposition of the New Jersey receivers. While the period of receivership was quite limited in time it was probably intensive in character. The total allowances asked for by receivers and counsel was $64,745.27. These allowances were actively opposed by counsel for the debtor and reduced by District Judge Hulbert, evidently after careful consideration, to the aggregate amount of $26,155.74. The respective allowances were as follows:

| Receivers | Amount Requested | Amount Allowed |
|---|---|---|
| Jos. F. O'Shaughnessy | $13,500.00 | $ 5,000.00 |
| Alexander Weinstein | 18,500.00 | 6,000.00 |
| Disbursements | 2,480.45 | 2,480.45 |
| Joseph R. Truesdale | 20,000.00 | 6,000.00 |
| Atty. for Receivers. | | |
| Disbursements | 1,177.35 | 837.82 |
| Austrian & Lance | 7,500.00 | 5,000.00 |
| Attys. for Plaintiffs. | | |
| Disbursements | 87.47 | 87.47 |
| Stern & McGivney | 1,500.00 | 750.00 |
| Attys. for Noteholders. | | |
| Totals | $64,745.27 | $26,155.74 |

Viewing these reduced amounts, as an entirely original proposition, I would be disposed to think, looking at the whole case in retrospect, that these allowances were on a more liberal scale than would have been adopted here. Nevertheless I have concluded that I should approve them with the exception of the allowance to Stern and McGivney, to be hereafter considered, because the matter was evidently carefully considered by the District

Judge after hearing both sides and with, of course, fuller and better knowledge of what had been done in the particular Court than I can have at a distance. And although the ultimate responsibility is on this Court to determine the allowances to be finally made, it is obvious that in such a situation the judgment of the judge having the instant jurisdiction, after contest, should be accorded very great weight, and should not be departed from unless, in view of the perspective of the whole case, the allowances seem clearly to be unreasonable.

■ With respect to the allowances made in New Jersey and the Maryland State Court, different considerations prevail. The allowances there were apparently made ex parte and without substantial contest of any kind. Of course I am sure that they represented the very best judgment of the respective judges, as to their reasonableness, in the light of the information available. And it is with reluctance that I conclude that in the light of the perspective of the case as a whole and with the information now available and after contest here, I am not able to approve all of the separate allowances as reasonable. I have considered each in detail. The respective claimants have filed written petitions reciting their services and a number of them have added their personal testimony here in Court. I have considered them not only in the aggregate but separately. While the New Jersey proceeding had a broad scope as its final aim and objective under the statute conferring jurisdiction on the Court, it is apparent that by the very nature of the case there was nothing very actively constructive that the receivers there were able to accomplish. It is also to be considered that the proceeding was initiated in the interest of noteholders although, of course, if the case had progressed further the interests and rights of all parties interested in the corporation would have received appropriate attention from the Court. It should also be said that the persons selected as receivers by both Courts were apparently gentlemen of unquestioned experience and ability and if they had had fuller opportunity for service would no doubt have rendered it in a very successful manner. Nevertheless allowances to receivers in these two receiverships in the aggregate amount of $50,500 for a period of two months seems to me to be unreasonably large especially when we bear in mind that the executive offices and business management of the company apart from manufacturing, was in New York under the jurisdiction of a separate receivership in which additional allowances of some $13,480.45 were made to receivers there. The allowances were made for services of about two months and if continued for a year at the same rate would have reflected an annual charge of over $300,000 for receivership allowances. Prior to the receivership the president, who was the chief executive of the company, had been receiving a salary of only $20,000 a year. In view of the number of receivers and the three separate receiverships, and the necessarily restricted opportunities for services of the several receivers, and the fact that their services were largely consultative or advisory only, and required only a part of their time, in my opinion a reasonable fee to each of the New Jersey receivers should not exceed about $1,500 a month. I therefore make the following allowances to the New Jersey receivers:

To Mr. McGuire, who served only from December 19, 1934, to January 15, 1935......... $1,500.00
To Mr. Ferguson, who served only from January 15, 1935, to March 2, 1935............... 2,500.00
To Mr. O'Regan, who was receiver in each of the three receiverships but apparently allowed compensation only in the New Jersey receivership, the allowance will be 3,500.00

The allowances to Messrs. Burke and Finan will be considered hereafter.

Proceeding now to a consideration of the allowances to be made to counsel for services in the New Jersey and Maryland receiverships, I approve as reasonable without the necessity of further discussion the allowance to Lindabury, Depue and Faulks, attorneys of Newark, N. J., in the amount of $750 as a fee and disbursements of $280.54, a total of $1,030.-54; to William C. Walsh, of Cumberland, Md., $100; to David A. Robb (now Judge Robb), of Cumberland, Md., a fee of $1,-800 and $270 disbursements, making a total of $2,070.

I think a reasonable fee to Pitney, Hardin and Skinner in lieu of their allowance of $1,000 by the New Jersey Court will be $500. But in addition thereto they have filed a bill for services to the corporation prior to the receivership as a creditor, to which no objection was interposed, but which was deferred for con-

sideration in connection with the present matter, in the amount of $2,021.11, which will be allowed. The total allowance, therefore, to Pitney, Hardin & Skinner is $2,521.11.

There will also be confirmed the allowance made in the New Jersey receivership of amounts to be paid to a number of non-resident counsel for services in connection with anticipated additional ancillary receiverships which did not mature. The amount thereof is approximately $800.

█ William Harris as special counsel to Alex. Weinstein appointed as an additional receiver in New Jersey, was allowed a fee of $5,000 in the New Jersey case, plus disbursements of $148.23. Mr. Harris testified and was cross-examined in this case quite fully with regard to the nature and extent of the services for which this allowance was made. His testimony should also be considered in connection with that of Mr. Weinstein who was also examined as a witness on the same subject. I have also considered his typewritten petition as filed in this case describing his services. In view of the fact that Mr. Merritt Lane was general counsel for the receivers in New Jersey, it seems somewhat exceptional that it was necessary to appoint Mr. Harris as special counsel for Mr. Weinstein. The principal service that he seems to have rendered was in effecting a so-called compromise between the New York and New Jersey receivers in consequence of which Mr. Weinstein was made a New Jersey receiver in addition to his appointment in New York; and Mr. O'Regan who had been appointed originally in New Jersey was added to the New York receivers. Mr. Harris' petition indicated that the total of 229 hours was spent by him for services in connection with the case. It is a little difficult to see how so much time could have been profitably or usefully given to such a very special matter. His itemized time sheet seems to indicate a range of matters attended to quite beyond the special service to Mr. Weinstein, and seemingly a duplication of work more naturally within the scope of Mr. Lane. Considering all the testimony bearing on his petition I reach the conclusion that a fee of $1,500 will be reasonable and adequate for the particular service. The allowance to him is therefore $1,648.23.

█ Messrs. White and Case, well-known lawyers in New York City, were retained to represent the New Jersey receivers in opposition to the New York receivership. They were allowed in the New Jersey Court $6,500 for a fee and $48.78 for disbursements. After considering their petition I conclude that $2,500 plus disbursements is a reasonable allowance. The allowance to them is, therefore, $2,548.78.

Messrs. Stern & McGivney, Alfred Ritter, Scott McLanahan and Stanley Clarke were also made allowances for counsel fees in the New Jersey case, but the allowances to them will be hereafter considered in connection with the allowances to be made in this Court.

We come now to allowances to be made to trustees and their counsel, to depository banks, to committees and their counsel in the reorganization proceedings in this case. First, as to the claims of the several depository banks. I allow the bill presented by the Mercantile Trust Company of Baltimore in the amount of $550.35; The Baltimore National Bank in the amount of $250; the Manufacturers Trust Company, $1,642.78; Central Hanover Bank and Trust Company, $1,423.38. The New York Trust Company was the principal depository for the exchange of the Goodyear stock and cash for stock of the debtor corporation. They have presented bills for $15,123.50. The services of this company were necessarily very extensive in detail and it is agreed by all they were very efficiently rendered. In addition to their written petition for allowance of compensation and expenses the nature of their services has been explained orally in the testimony of their representative. For the reasons expressed at the hearing I think their total bill, in view of all the circumstances and the wholesale nature of the transaction, is somewhat too large. I allow as compensation for their services performed and to be performed $10,000 and for their disbursements (including an additional bill of $124.22 very recently rendered) $1,119.74, making a total allowance to them of $11,119.74.

The Public National Bank and Trust Company of New York has rendered a bill for $1,360.09 for disbursements of cash pursuant to plan of reorganization. This is allowed. They have rendered a separate bill for services as trustee under the agreement (defining and securing the

note issue of the corporation) in the amount of $2,500, and their counsel, Messrs. Moses and Singer, have filed claim for $2,500 for professional services in connection therewith. Attention is called to the provisions of the note agreement whereby the trustee is to be reimbursed for its expenses and is entitled to compensation for the administration of the trust. Mr. Moses gave oral testimony at the hearing. On consideration of this request for allowance I reach the conclusion that an allowance of $750 to the trustee for its compensation for services described and further allowance of $750 to it for fee of its counsel will be reasonable and adequate. Allowance to the Public National Bank therefore for itself and its counsel is $2,860.09. No separate allowance is made to its counsel.

The aggregate allowance to the banks to be made in these proceedings is therefore $17,744.27.

■ Mr. Sydney Krause is a New York attorney who filed the 77B petition on behalf of certain noteholders as creditors in the Southern District of New York. He requests a fee in the amount of $3,000 and disbursements in the amount of $113.39, stating also that he performed certain other incidental services in connection with the particular petition and that he also appeared in the proceedings here when the debtor's petition in this case was filed. It appears that he asked and received a fee of $500 from the committee of common stockholders of which Mr. Engle was a member, and Mr. Biddle, Secretary. In addition to the fee of $500 already paid I regard a further fee of $500 and disbursements of $113.39 to be reasonable.

■ Mr. Harry O. Levin, a well known Baltimore attorney, acted as counsel jointly with Messrs. Venable, Baetjer & Howard, in filing the proceeding in this case. He also previously had been retained in connection with ancillary receivership proceedings to be filed in this district. He visited New York on one or more occasions in connection with his employment. He requests an allowance of $1,000 plus $33.60 for disbursements. In view of the perspective of the whole case I find a reasonable allowance will be $500 and disbursements, in all $533.60.

■ Judge Doub, until recently Judge of the Circuit Court for Allegany County, was requested by the trustees in this case to make some title examination in connection with the transfer of the plant of the Company in Cumberland to the new corporation formed under the reorganization plan. He has requested an allowance of $1,000 for this service. In Maryland the vendor of property is not required by custom to incur the expense of furnishing abstracts of title to the vendee. No order of Court was obtained authorizing this particular employment. The work has, however, been done and doubtless facilitated the transfer. It is, therefore, reasonable to make the allowance.

■ Mr. Truesdale, New York attorney, who was allowed $6,000 in the New York case also requests an additional allowance of $2,000 in this case for services performed in making collections for the corporation in the amount of $15,000. It appears, however, that these resulted from his services during the New York receivership and as no continuing authority was asked or given in these proceedings, no further allowance will be made to him, especially as the New York allowance seems to have been liberal.

When the plan of reorganization was first considered, there was some question whether the fund reserved for administration expenses and taxes, contested claims and miscellaneous expenses would be adequate and some of the parties in interest to whom the above allowances have now been confirmed, objected to the order of payment provided for in subdivision (d) of paragraph 12 of the plan. A number of other counsel representing themselves and various clients, in order to avoid the failure of confirmation of the plan, agreed to subordinate their claims for allowances in consequence of which the original order of proposed payments from the fund was changed and in the order of confirmation passed July 5, 1935, it was stated:

"Harry N. Baetjer as counsel for the Trustees, for the Debtor and the Debtor's Subsidiaries, Stanley Clarke as counsel for Robert J. Levy, the proposer of the Levy Plan; John M. Sheffy as counsel for the Stratton Committee; Eben J. D. Cross as counsel for the Braden Preference Stockholders Committee; Alfred L. Ritter as counsel for the Guttman Committee for the Preference Stock; Robert M. King as counsel for the Hepler-Patterson-Main Committee, concurred in and

consented to the changes and modifications to the Amended Plan so proposed by Mr. McLanahan."

The substantial effect of this was that if the fund as a whole was inadequate to pay reasonable allowances to all those who subordinated their claims they would be paid pro rata only from the available balance of the fund. In this connection and before passing to allowances to be made to trustees and their counsel, and committees and their counsel in this proceeding, it should be said that the attorneys and parties named are entitled to commendation for this unselfish attitude as well as for the fine spirit of co-operation which they and some others evinced throughout the proceeding in their finally successful efforts to save the plan in the interests of the security holders of the Company.

There were two committees of noteholders—the Stratton Committee consisting of W. B. Stratton, George Peabody, Wm. P. Dunn, Jr., and John M. Sheffy, secretary. The counsel for this Committee, were Messrs. Stern and McGivney, New York lawyers; the other noteholders committee was headed by Robert J. Levy whose counsel was Stanley Clarke. Both committees with their counsel rendered efficient and extensive services throughout the proceeding in the effort to secure confirmation of a mutually satisfactory plan. Both committees and their attorneys have requested allowances for their disbursements and services. The Stratton Committee represented a substantial amount of the notes. It had disbursements of $3,672.18, an itemized statement of which has been filed. The expenses covered photostats, typewriting, postage, telegrams, affidavits, telephone and stationery, advertising, etc. In this connection it may be noted that the notes were not registered and it was difficult for the Committees to get in touch with the several actual noteholders. And likewise it may be said that the same is true with regard to the holders of the stocks of the Company, many of which were registered in so-called "street" names which did not indicate the real owners of the stock which from time to time had been sold and transferred by the brokers in whose names the stock stood without finally being transferred on the stock ledgers. To get in touch with the real security holders therefore required much advertising and some expenditures. What is said with regard to the disbursements of this Committee applies measurably to that of other Committees hereinafter mentioned. Some of the itemized expenditures were incurred before the filing of the plan in this case and indeed before the filing of the proceeding here and while the prior receivership proceedings were current or even prior thereto. Under the wording of the statute directly involved in this case it may be doubted whether such expenditures prior to the filing of the plan should be paid as a part of the administration expenses in this case. It is, however, argued on behalf of these Committees that the expenditures actually incurred in this case finally to the benefit of the plan. And it is argued that procedure even antedating the final formulation of the plan or this proceeding should fairly be regarded as incident to the plan when it contributes to its confirmation. It would be difficult to know just where to draw the line with respect to many of the disbursements even on this liberal principle. And I find it unnecessary to do so as I reach the conclusion that a lump sum allowance should be made to the several Committees to cover their compensation and disbursements and the compensation of their counsel. In addition to the disbursements made by the Stratton Committee Messrs. Stern & McGivney as their attorneys were allowed a fee of $2,500 in the New Jersey case and an additional fee of $750 in the New York case. Mr. Stern at the recent hearing in this case took the position that these allowances could be regarded as waived in favor of a lump sum allowance to be made here. I have heretofore expressed the opinion that, while the expenses of the Committees of security holders which directly relate to the particular plan should be allowed, compensation to the members of the Committees ought to be nominal rather than substantial. Of course, to the extent that the members of the Committee have themselves performed detailed services, reasonable allowances are authorized by the statute, but in my view such committees serve in a really fiduciary capacity and their members ought to be sufficiently disinterested to be in a position to give proper advice to the security holders whom they represent. If substantial allowances are to be made to these Committees which in their nature are somewhat contingent upon the confirmation of

736

the plan, we have the undesirable result of interested rather than disinterested Committee members. Considering the matter as a whole, I make an allowance of $7,500 to the Stratton Committee for their services and their disbursements and appropriate payment thereout to their counsel, Messrs. Stern & McGivney; and in consideration thereof I make no separate allowance to Messrs. Stern & McGivney either in this case or for account of their allowances previously made in the receivership cases. I assume after making proper disposition of their disbursements, most of the balance of the allowance will be payable to their counsel.

The Levy Committee did effective work to secure the confirmation of the plan. It and its counsel had disbursements of $5,320.78. It represented about $450,000 of notes. Its attorney, Mr. Stanley Clarke, has attended numerous hearings here in Baltimore and has rendered efficient services in promoting the confirmation of the plan. He was allowed a fee of $7,500 in the New Jersey case. He performed definite services in the New Jersey case for the receivers in opposing other receiverships in Chicago and possibly elsewhere. Nevertheless in view of the fact that he represented only a particular interest there I would not be able to confirm the allowance there made to him as I think it too liberal. I allow the Levy Committee for its services and disbursements and for fee to Mr. Clarke in prior proceedings in this case $9,000.

There were two committees for the preferred stock. The Braden Committee consisting of Messrs. Spruille, Braden, Brooks, Barnum, Merritt and Rankin, whose attorneys were Chaffe, Dawson & Sheely, New York attorneys, with Mr. Eben J. D. Cross, Baltimore attorney. Their disbursements were $5,083.25 plus disbursements of their counsel in the amount of $394.95. This committee also rendered effective services in the formation and consideration of the plan and securing the approval of the majority of the preferred stockholders. I allow to the committee for its compensation and its disbursements and for payment of reasonable fees to its counsel the sum of $8,500.

The Guttman Committee also represented a small group of preferred stockholders. Its attorney was Mr. Alfred L. Ritter. He was allowed a fee of $250 in the New Jersey case plus disbursements of $182. Messrs. Guttman and Ritter attended several hearings in this Court and contributed to the promotion of the plan here. The committee had disbursements of $300.50. Much of its work was during the receiverships which I think is not allowable here, and it does not clearly appear that there was any real necessity for this separate preferred stockholders' committee in this case. It obviously would not be reasonable or practicable to allow individual and separate compensation to each and every group of stockholders who preferred to act separately rather than with others in their class. I think an allowance to this committee for its services and disbursements in this case, including that of its counsel both in this and prior cases, should be regarded reasonable in the amount of $1,500.

There are also two committees representing the common stockholders. One was the Hepler-Patterson-Main Committee with Messrs. Swiger, King & Chambers, New York lawyers, as counsel. They had disbursements of $4,681.39 and $538.39. They represented a substantial amount of common stock and performed efficient services in the reorganization plan. I make an allowance to them of $7,500 for compensation to the committee, disbursements and counsel fees.

The other common stockholders committee consisted of a Mr. Engle and others. It was active in the New York receivership and to some extent in the New Jersey receivership. Its original attitude in the present proceeding was that of a very definite opposition. It appears, however, that after making extended efforts to formulate a satisfactory other and different plan of reorganization than that which was finally consummated the members of the committee concluded to recommend the approval of the plan that was finally adopted. They submit an itemized statement of disbursements in the amount of $8,230. I am not able to allow the whole of this. Mr. Engle at my request has severed those expenses which seem to be fairly allowable in connection with the present plan which amount to $2,331.80 to which should be added a fee of $500 paid to Mr. Krause who, as above mentioned, filed the creditors' suit under 77B in New York; and they also paid certain disbursements to Linda-

bury, Depue and Faulks in the amount of $214. I therefore allow this committee $3,000 for all services and expenses.

Mr. Merritt Lane has, I understand, also agreed to subordinate his allowance to be made in this case. He was allowed a fee of $20,000 in the New Jersey proceedings. Mr. Lane is one of the outstanding members of the New Jersey Bar. He has appeared at several of the hearings in this case and I am satisfied that his services in the New Jersey proceeding must have been important and valuable to all concerned. The allowance as there made, however, seems to me in view of the perspective of the whole case, too large. I make an allowance to him in the amount of $7,500.

Mr. Scott McLanahan also agreed to subordinate his claim for allowance. He was counsel to the debtor corporation prior to the receiverships, for which he has rendered a bill for about $2,000, and was also allowed $2,500 in the New Jersey receivership case. He participated in opposition to the allowance asked for in New York and was successful in having them materially reduced. He performed other miscellaneous services for the debtor corporation from time to time in this proceeding. In lieu of all prior allowances and claims and for services in this case, including his disbursements, I allow him $5,000.

The remaining allowances to be considered are those of the trustees and their counsel in this case, Messrs. Burke and Finan, and Messrs. Venable, Baetjer and Howard, of Baltimore. The services of these gentlemen have specially come under the observation of the Court. All of them rendered valuable and efficient services in connection with the plan of reorganization and the current management of the affairs of the corporation. Mr. Burke was the former president of the company and has served as receiver in the three cases and as trustee in this case. He was allowed $13,500 by the New Jersey Court without allowance in other receivership cases. His salary as president had been at the annual rate of $20,000. He is a competent rubber-tire manufacturing executive and his services have been retained by the new company which has succeeded to the business in this case. Many efforts were made by different people to effect a consolidation or sale of the Kelly Spring-field Tire Company to other rubber tire manufacturing companies or interests of allied nature. They all failed where Mr. Burke succeeded in interesting the Goodyear Tire and Rubber Company. For this he is entitled to great credit. But while he initiated the particular transaction which finally resulted favorably, others, including Mr. Finan and Mr. Harry N. Baetjer as counsel for the trustees, all in active negotiations with the Goodyear interests, contributed very materially to procuring terms of reorganization from the Goodyear Company which enabled the plan to be formulated with any prospect of success. Up to August 5, when the plan was finally made effective, Mr. Burke had served as receiver and trustee for approximately nine months. He received compensation from the company during this time at the rate of $1,000 a month beginning March 1, but has received no other compensation. The total amount paid him on account is $5,015.38. Apart from Mr. Burke's special services in interesting the Goodyear Tire and Rubber Company in the reorganization plan, I would think an allowance to him on the basis of continuing his annual salary of $20,000 a year would be reasonable, say $15,000 for the period of his services. To this I add $5,000 for account of his special services above referred to making the total allowance to him now to be made in addition to what he has already received on account, $15,000.

Mr. Finan is a prominent banker and business man of Cumberland, Maryland. He was appointed one of the receivers in Allegany County and allowed there $10,000 by Judge Doub, which has not been paid. His services have been rather of an advisory nature throughout the reorganization. It has not taken all his time. He is a man of many interests in Cumberland. He was effective in negotiations and consultations in securing modification of the original Goodyear offer. One of the terms of the offer was a tax exemption from Cumberland. Mr. Finan as a resident of Cumberland was naturally interested also in forming a plan which would incidentally continue operations at the Kelly plant which employs a thousand or more people. He has received on account of his services as trustee in this case $2,557.69. In addition thereto I make him a further allowance of $7,500.

738

■ Mr. Harry N. Baetjer with his associate, Mr. Stuart S. Janney, Jr., of Venable, Baetjer and Howard, as counsel for the trustees, have given active, efficient and, according to my observation, quite continuous services from the inception of the case in this Court. He and his firm are very experienced in corporate financial matters. I am satisfied that Mr. Baetjer's services as counsel in negotiating with the trustees the plan finally proposed was most valuable to the estate. The files of the case will show the very numerous papers which he and his associate had to prepare and file in the case. In addition to this, of more and doubtless greater importance, was his constant contact with the Court both in open Court and in Chambers and his current advice to the trustees. He was charged with and efficiently performed the major and indispensable and comprehensive legal service throughout the whole reorganization proceedings. I believe this is cheerfully acknowledged by all parties in the case. The minimum reasonable fee for the services is $15,000, which I allow.

The aggregate of all allowances thus allowed and approved is $150,617.28. For convenience an itemized list thereof is appended hereto.

■ Having considered the several claims in detail it is pertinent to look at all of them in the aggregate in relation to the case as a whole. Viewed in the abstract it may seem that total allowances of approximately $150,000 for administration expenses in connection with the reorganization of the company is a very large sum. But there are other considerations to be borne in mind. The company has been in receivership and in reorganization nearly a year. If there had been no receivership or reorganization Court proceeding, a substantial amount of these expenses would have been incurred in any event. The president's salary which is included here was at the rate of $20,000 a year. The company had a national distribution with many branch offices and far-flung activities with several subsidiaries. Very probably ordinary counsel fees for these various activities would have approximated $30,000 in this time; but apart from these considerations, if we look at the case as one of liquidation, for purposes of comparison, we find that $4,500,000 has been distributed to security holders with an administration expense (which includes three receiverships and one bankruptcy case under 77B) of approximately $150,000. This is at the rate of about 3%. If the company had gone through ordinary bankruptcy alone the administration expenses would probably have been much more than this amount even at very limited rates allowable under the ordinary bankruptcy law. It is common knowledge that the ratio of administration expenses to assets in bankruptcy varies with different cases from 10% to 25% or more. Here it is limited to about 3%. Of course, it is true that the average bankruptcy case does not involve anything like so much a sum as $4,500,000 for distribution. On the other hand, it is probably seldom indeed that bankruptcy succeeds as many as three separate receiverships, the expenses of which have to be included in the whole administration expense. This case is indeed unusual in many aspects. But looking at the result as a whole I do not think it can reasonably be said that the ratio of total-administration expenses to results achieved is other than reasonable in the interests of the security holders. While I have approached the allowances from the standpoint of making them moderate rather than liberal, and with every disposition initially to save a substantial balance for the common stockholders, I find myself unable to reduce the allowances as made to lower sums and still do justice to persons who have rendered services in the interests of the estate.

As this case has been a rather unusual one under a new law it may be worth while to venture some suggestions for similar cases arising in the future, for lessening the administration expenses to be incurred. In the first place it is probably commonly understood now by those who have had experience in such matters, that reorganization under 77B of financially embarrassed corporations affords much greater relief to security holders than equity receiverships which are proverbially expensive and it would seemingly be desirable to avoid the necessity of a receivership prior to reorganization under 77B. And this I think is now commonly understood by the Bar. But even if prior receivership expenses can be avoided, there are certainly lessons to be learned from this case which could be applied with advantage in the future in the avoidance of unnecessary duplica-

tion of work leading to additional expense. While the Court, especially at the inception of a case, is seldom in a position to require adverse interests to unite in such a way as to minimize expenses, it would seem to be a possible thing in future cases to strongly advise if not require the selection of one bank as depository instead of several, and also the appointment of not more than one committee for each class of security holders whose interest in the corporation are the same. Of course this may not be feasible in any particular case, as it certainly did not seem to be so in this case at the inception; but if it eventuates in a similar case in the future that committees and depositories are unnecessarily multiplied the Court may very reasonably decline to approve allowance to the unnecessarily multiplied agencies.

Finally, with regard to the several allowances, I may submit the comment that the problem has been a difficult one and very probably the result will hardly be pleasing to any one. It is, as I have said, with great reluctance that I have reduced allowances made in other Courts. With respect to the several lawyers and committees who agreed to subordinate their claims, the nature of the agreement as I interpret it, was such, especially in view of the fact that they have not insisted for the most part on specific allowances to be made in this case but have left the matter to the judgment and discretion of the Court, that I have been asked to exercise my discretion with regard to the allowances to be made. It must be, I think, obvious to all that with a limited fund and very numerous claims the practical situation as well as the principles involved have required the allowances, especially for services in this Court, to be moderate and not liberal. The allowances as made represent my best judgment, in view of the whole situation.

| | |
|---|---:|
| John F. O'Shaughnessy | $ 5,000.00 |
| Alexander Weinstein | 8,480.00 |
| Joseph R. Truesdale | 6,837.82 |
| Austrian and Lance | 5,087.47 |
| Mr. Maguire | 1,500.00 |
| Mr. Ferguson | 2,500.00 |
| Mr. O'Regan | 3,500.00 |
| Lindabury, Depue & Faulks | 1,030.54 |
| Wm. C. Walsh | 100.00 |
| David A. Robb | 2,070.00 |
| Pitney, Hardin & Skinner | 2,521.11 |
| Counsel in anticipated ancillary proceedings | 800.00 |
| William Harris | 1,618.23 |
| White and Case | 2,548.78 |
| Banks as Depositories, etc.: | |
| Mercantile Trust Co. of Baltimore | 550.35 |
| Baltimore National Bank | 230.00 |
| Manufacturers Trust Co. | 1,642.78 |
| Central Hanover Bank & Trust Co. | 1,423.38 |
| New York Trust Company | 11,119.74 |
| Public National Bank and Trust Co. (including Moses & Singer) | 2,860.09 |
| Sydney Krause | 613.39 |
| Harry O. Levin | 533.60 |
| Judge Doub | 1,000.00 |
| Stratton Committee, including disbursements and counsel fee (Stern & McGivney) | 7,500.00 |
| Levy Committee, disbursements and fee to counsel, Stanley Clark | 9,000.00 |
| Spruille, Braden Committee, including disbursements and counsel fee of Chaffe et al. and Eben J. D. Cross | 8,500.00 |
| Guttman Committee, disbursements and counsel fee | 1,500.00 |
| Hepler-Patterson-Main Committee, including Swiger, King & Chalmers | 7,500.00 |
| Engle Committee, for disbursements | 3,000.00 |
| Merritt Lane—fee and disbursements | 7,500.00 |
| Scott-McLanahan—services and disbursements | 5,000.00 |
| Mr. Burke, additional allowance | 15,000.00 |
| Mr. Finan, additional allowance | 7,500.00 |
| Venable, Baetjer & Howard | 15,000.00 |
| | $150,617.28 |