In re CONSOLIDATION COAL CO.
No. 7850.

District Court, D. Maryland.
April 24, 1936.

846

See, also, 11 F.Supp. 594.

WILLIAM C. COLEMAN, District Judge.

Following confirmation by this court of a plan of reorganization of the Consolidation Coal Company pursuant to the provisions of section 77B of the Bankruptcy Act (11 U.S.Code, § 207, 11 U.S.C.A. § 207), on the 29th day of November, 1935, that company's operations ceased to be under the jurisdiction of this court, all matters incident to the reorganization having been completed except the fixing of various allowances to interested parties. A large number of applications for allowances of various kinds have been filed with the court. The act (subsection (c)(9), 11 U.S.C.A. § 207(c)(9), provides that the court "may allow a reasonable compensation for the services rendered and reimbursement for the actual and necessary expenses incurred in connection with the proceeding and the plan by officers, parties in interest, depositaries, reorganization managers and committees or other rep-

resentatives of creditors or stockholders, and the attorneys or agents of any of the foregoing and of the debtor." None of the applications relate to services performed prior to the commencement of the equity receivership in 1932. However, a number of them do relate to services rendered during that receivership, to which a separate provision of the act (subsection (i), 11 U.S.C.A. § 207(i), is applicable, as follows: "and the judge shall make such orders as he may deem equitable for the protection of obligations incurred by the receiver or prior trustee and for the payment of such reasonable administrative expenses and allowances in the prior proceeding as may be fixed by the court appointing said receiver or prior trustee." The act further provides (subsection (c) (7), 11 U.S.C.A. § 207(c)(7) that the court "shall cause reasonable notice of * * * the allowance of fees or expenses, to be given creditors and stockholders by publication or otherwise." The plan of reorganization contains the following provision (section VI, Costs): "The Company will pay in cash all costs and expenses incurred incident to putting into effect this Plan of Reorganization, together with all costs and expenses of the Protective Committees representing the Refunding Mortgage Four and One Half Per Cent. Gold Bonds and the First & Refunding Mortgage Forty-Year 5% Sinking Fund Gold Bonds of the Coal Company, including compensation to the members of said Committees, the respective Secretaries and Depositaries thereof and the counsel for each such Committee and for the holders of the 5% Secured Gold Notes of the Coal Company; and all other costs of administration and allowances made by the Court in the Debtor proceeding, as well as such reasonable administrative expenses and allowances as shall be made in the receivership proceedings of the Debtor and in the foreclosure proceedings in the District Court of the United States for the District of Maryland consolidated with said receivership proceedings, one brought by the Bankers Trust Company, as Trustee under the Refunding Mortgage of Coal Company and one brought by the Guaranty Trust Company of New York, as Trustee under the First & Refunding Mortgage of the Coal Company, seeking the foreclosure of those liens, respectively; provided, however, that no payment herein contemplated shall be made until the amount of the same and the payment thereof shall have been approved by order of the District Court of the United States for the District of Maryland in the proceeding in which this Plan shall be filed, after such notice as the Court shall determine upon and direct."

Pursuant to the aforegoing, there was mailed to every known stockholder and creditor by the trustees appointed by this court, an itemized statement of all applications that had been made for allowances, showing the amount and character thereof, the period of time covered by same, and what, if any, previous allowances had been made to any of the applicants. The notice further stated that all of the applications would be heard by this court on a particular day, which was more than fifteen days subsequent to the mailing of the notices. There was also an abbreviated notice of the applications and of the hearing, inserted in local newspapers. This hearing was duly held. No parties appeared in person or by counsel to object to any of the requested allowances, although a large number of letters were received by the court and two formal petitions were filed, protesting against the total amount of the requested allowances on the ground that it was excessive, all such protests being of a very general character.

At the hearing, the court, in addition to considering the details of the formal applications with affidavits which had been filed by each applicant, caused verbal presentation to be made of each applicant's claim, and announced that in each case, the court was prepared to hear any remarks or testimony relative thereto by any party in interest, whether in support of or in opposition to the requested amount. At the close of the hearing, which consumed a number of hours on February 27th, and which was continued on March 12th for the purpose of hearing some of the applicants who had requested this postponement, the court took all of the applications under consideration. This opinion now deals with these applications and determines which ones are deemed reasonable and proper.

The reorganization of the Consolidation Coal Company has been an unavoidably protracted and difficult task. It commenced on June 13, 1932, when a bill in equity for the appointment of receivers was filed in this court. On July 13, 1934, the equity

receivership was superseded by reorganization proceedings under section 77B of the Bankruptcy Act. On the 12th day of July, 1935, the plan of reorganization was confirmed by this court, as a result of which, a final decree was signed by this court on the same day, no appeal was taken, and the company ceased to be operated under the jurisdiction of this court.

Knowledge of many of the complex problems involved in the reorganization of the company is essential for a proper understanding of the primary questions with which the court is now faced in passing upon the reasonableness of the applications before it. However, since these problems have been so fully covered in the numerous hearings which occurred in the course of the reorganization proceedings, and are alluded to in the rather lengthy opinion of this court that was rendered at the time the plan of reorganization was confirmed, they will not now be repeated, but reference is made to that opinion. 11 F.Supp. 594.

The applications now before the court represent the very large sum of $408,551.99 in allowances requested, in addition to which, reimbursement for expenses in the total amount of $47,262.87 is requested. To various claimants a total of $154,370 has previously been allowed in the course of some part of the reorganization proceedings, that is, either in the equity receivership or in the subsequent proceedings under section 77B. These requested allowances may be divided into three general classes: (1) Attorneys' fees; (2) allowances to banks; and (3) allowances to committees and reorganization managers. The total amount, in round figures, asked for under (1) is $252,405; under (2) $75,143; and under (3) $81,000, aggregating, as already stated, the sum of $408,548.

Thus generally classified, the various requests falling under each of the three classes will now be considered separately. Obviously, there is no yardstick or precise rule which a court, in a proceeding of this kind, may adopt to govern it in determining the reasonableness of such requested allowances. There are, of course, a few fundamental factors which basically must serve as a guide. These are first, the character and extent of the particular services for which compensation is sought; second, the interests that are involved, or, otherwise stated, the assets of the debtor corporation; and, third, the results finally attained by the reorganization considered in its entirety, with particular relation to the losses sustained by the company's security holders and other creditors; or, stated somewhat differently, the fact that the circumstances are not normal, but of a special character because the debtor corporation has had to seek the protection of the court and has been unable to meet its obligations as they mature, in and of itself obviously requires that what might be allowed for the same services rendered to the same company were it solvent, and operating as a going concern entirely outside of the jurisdiction of the court, can be no fixed criterion. That is to say, what may customarily be paid, or what may be entirely reasonable, under the latter circumstances, should, in the present instance, be taken as at most prima facie persuasive of the rule to be adopted, and in no sense conclusive. In short, in all proceedings of this kind, we must start with the proposition that all allowances, while they must be fair, must, nevertheless, be moderate as opposed to liberal. In its opinion confirming the plan of reorganization, this court said (11 F.Supp. 594, at 598, 599): "There seems to have grown up in bankruptcy proceedings generally throughout the country a feeling that it is entirely proper to pay lawyers and others even more in bankruptcy and receivership proceedings than might otherwise be paid, on the theory, apparently, that their work is harder because they are dealing with a very ill patient. This court has never subscribed to that doctrine, and will not do so in this case. The court has tried up to date to allow to the attorneys involved —and there has been a large number—fees that have been reasonable compensation for the services rendered, taking always into account, however, that we were dealing with a concern that could not be treated like one in normal times, getting along successfully. Now, that same principle will have to apply with respect to applications for further allowances. In other words, the court will be very careful to see that these very substantial and very gratifying savings accomplished for the company by the receivership are not wasted, thrown away, or offset by excessive fees. The fees will have to be kept down to a basis which is commensurate with what we are dealing with, namely, a receivership or

bankruptcy proceeding. Attorneys and others will have to recognize that fact. I mention this, without knowing what those fees, or certainly a number of them, may be expected to be by the parties applying for them, but they must realize that they will be required to take their share of some of the loss that these stockholders and bondholders of the company have been compelled to share in."

I. *Attorneys' Fees*:

Taking up the requested allowances of the first class, namely, lawyers' fees, and considering them in the order in which the names of the various counsel appear on the notice which was mailed to creditors and stockholders, copy of which for convenience is annexed to and made a part of this opinion, we reach the following conclusions with respect thereto:

■ Semmes, Bowen & Semmes. The requested fee of $2,000 for services rendered as counsel to the trustees from June 5, 1935, to the close of these proceedings, together with reimbursements and expenses in connection therewith in the amount of $204.29, is considered reasonable and proper. Full account is taken of the fact that this firm has previously been allowed, since the inception of the proceedings in June, 1932, the total sum of $52,500, first as counsel for the receivers, and later as counsel for the trustees under section 77B. But the court believes that the aggregate of the two amounts has been fully earned and represents a proper, total allowance. The work performed by this firm for more than three years has been of a continuous, complicated, and arduous character. When the additional amount of $2,000 now requested is added to the previous allowance, making a total of $54,500, this results in an allowance to this firm of approximately $1,300 a month. Knowing, as the court does, the detailed legal work which was necessary to be done, day by day and week by week, as the proceedings progressed, the court feels that such remuneration is in no sense excessive, but has been fairly and fully earned when tested by the rules which have been hereinbefore referred to.

■ Milbank, Tweed, Hope & Webb. This firm has previously received as counsel for the receivers in the equity proceeding, the sum of $52,000, and an additional sum of $2,500 for services rendered in connection with a protracted piece of litigation, conducted in the Sixth Circuit, arising out of the receivership of the Austin Machinery Corporation, formerly a subsidiary of the debtor. An aggregate additional allowance of $12,500 is now requested, $4,000 of which is asked for services as counsel for the Chase National Bank, New York, trustee under the indenture securing the 5 per cent. notes of the debtor company, rendered since August 13, 1935; and the balance, $8,500, is asked for additional services rendered in the separate litigation just referred to.

These items are believed to be too high. The $4,000 item will be reduced to $2,000 and the $8,500 item to $6,000 for the reason that total compensation of $8,000 for services in the special litigation referred to would seem to be adequate compensation; and, likewise, $2,000 for services to the Chase National Bank, trustee, extending over a period of approximately six months, would seem to be ample. The requested allowance for disbursements and expenses in the amount of $230.51 is granted.

■ Henry C. Hall. Mr. Hall has applied for $15,950 for services rendered as special counsel to the trustees in connection with rate matters extending from July 13, 1934, to November 26, 1935, and for disbursements and expenses in connection with same amounting to $1,220.30.

Mr. Hall has previously been allowed for similar services during the years 1932–33 and up to July 13, 1934, the sum of $28,495.16. An additional allowance of $12,000, that is $3,950 less than now requested, is believed to be reasonable and proper under the circumstances. The requested allowance for disbursements and expenses will be granted. Mr. Hall has performed difficult and extended services of a highly specialized character, which have been of material benefit from a revenue point of view to the debtor company.

■ Debevoise, Stevenson & Plimpton. This firm of attorneys is requesting $22,000 from June 14, 1935, to date, for services as counsel to the trustees (they having succeeded Messrs. Milbank, Hope, Tweed & Webb in this capacity), and disbursements in connection with same in the amount of $1,436.80. This firm has previously been paid, when acting as counsel for the company in the equity receivership pro-

ceeding, the sum of $6,000 and $12,000 for similar services to the trustees under section 77B, from July 13, 1934, to June 4, 1935.

It is believed that the additional sum requested is excessive in view of the character of the services and the relatively short period during which they were rendered. This sum is accordingly reduced to $15,-000, which would seem to be just and adequate compensation for all services rendered by this firm to both the trustees and later, to the company, incident to its reorganization. The requested allowance for disbursements and expenses is granted.

Parker, Carey & Doub. This firm is requesting $375 for services as counsel for the debtor company in the equity receivership, it having already received a similar amount, as part payment upon an application for a total of $750. Mr. Parker, senior member of this firm, has also been allowed for similar services the additional sum of $150. It is believed that the further sum of $375 now requested is reasonable and proper, and, therefore, should be allowed.

James Carey, 3d, and George C. Doub. The application of these attorneys is for $1,500 as counsel for the debtor company, for services rendered from the time the company became subject to the provisions of section 77B of the Bankruptcy Act to the end of these proceedings, plus disbursements and expenses in connection with same in the sum of $151.50. No prior allowances have been made to these attorneys except the sum of $375 paid to them as members of their firm as formerly constituted, to wit, Parker, Carey & Doub, and just referred to. It is believed that one-half of the amount requested, or $750, is as much as may properly be allowed for the services rendered. The requested allowances for disbursements and expenses is granted.

■ White & Case. These attorneys are requesting a total of $25,000, $17,500 of which is for services to the Bankers Trust Company under the debtor company's 4½ per cent. refunding mortgage bonds, covering a period of approximately a year and three-quarters under the equity receivership, largely devoted to the preparation of the bill for foreclosure and proof in connection therewith, which is later discussed in considering the application of Davis,

Polk, Wardwell, Gardiner & Reed; and the balance, namely, $7,500, covering a period of about a year and a quarter, during the 77B proceedings. Both requests are considered too high and a total of $12,-000 is believed to be reasonable and proper, and sufficiently large to include appropriate allowance to Baltimore counsel who assisted in the rendition of these services, namely, Messrs. Cook & Markell, next referred to, to whom the court prefers not to make any separate allowance, but to leave the same for adjustment between the two firms, trusting to the fairness of the New York firm in making the division. The requested allowance of $66.39 for disbursements and expenses in connection with these services is allowed.

Cook & Markell. These attorneys are requesting a total of $5,000, one-half for services as counsel for the Bankers Trust Company, trustee, under the debtor company's 4½ per cent. refunding mortgage, rendered during the equity receivership, and the other half for services rendered to this trustee during the 77B proceedings. While necessary, these services were largely of an advisory character, ancillary to the work which had been done by the trust company's primary counsel in New York, namely, Messrs. White & Case, and, as just explained, it is believed that the Baltimore counsel should be paid out of what has been allowed to New York counsel, in making which allowance, the work of the Baltimore counsel has been taken into account, in so far as it is possible for the court to appraise it.

The requested allowance for disbursements and expenses of $66.98 is granted.

■ Davis, Polk, Wardwell, Gardiner & Reed. This firm of attorneys has applied for $50,000 for services rendered as counsel to the Guaranty Trust Company, New York, trustee, under the debtor company's 5 per cent. first and refunding mortgage, commencing with the inception of the equity receivership and running down to the close of the reorganization proceedings. The greater portion of these services was rendered in connection with the preparation of the bill for foreclosure and the proof relating thereto, a proceeding which was abandoned when resort was had to 77B proceedings.

These services were admittedly of a very important and arduous character, in-

volving difficult questions of conflict between the different mortgage interests, and were more extensive than the corresponding services performed by White & Case, just considered. Furthermore, it is conceded that merely because unforeseen circumstances intervened to prevent the accomplishment of the end for which these services were rendered, this should not be taken as a reason for denying just compensation for same. Nevertheless, the request appears to be entirely out of proper relation to the scale of allowances that should be made for services of this nature in this proceeding, when tested by the principles which have been set forth at the beginning of this opinion. Compared, for example, with legal services rendered by counsel for the reorganization managers, by counsel for ·the protective committee of the debtor company's 5 per cent. first and refunding mortgage bonds, and by counsel for the protective committee for the holders of the debtor company 4½ per cent. refunding mortgage bonds, they do not appear to have been as important or difficult, and yet greater compensation is sought 'than any of these counsel have applied for.

As part of the argument in support of the requested allowance, it is pointed out that it represents only $1.89 per· bond. However, this is not believed to be a satisfactory method of approach. We start with the premise that. each particular allowance must be moderate; must bear a proper relation to every other one in the same general class, and that thus the aggregate of all of them will be moderate. It becomes, therefore, not so much a question as to whether each individual bondholder, if asked, would presumably say that he did not object to the pro rata which the allowance would represent in relation to the bonds held by him, but rather whether taking into consideration the past and present condition of the company, it is reasonable and proper to say that a fee is moderate which will deplete the company's assets, and its cash position to this extent.

The requested allowance is accordingly reduced to $18,000, and in so doing, the services, mostly advisory, of local counsel in Baltimore, that is, of Messrs. Ritchie, Janney, Ober & Williams, in assisting Messrs. Davis, Polk, Wardwell, Gardiner & Reed, for which an additional $5,000 is asked, have been taken into account.

Therefore, no separate allowance will be made to Ritchie, Janney, Ober & Williams, the court trusting to their New York correspondents to make such division as will be mutually satisfactory.

Ritchie, Janney, Ober & Williams. This firm of attorneys has requested $5,000 for services rendered to the Guaranty Trust Co., New York, trustee under the debtor company's 5 per cent. first and refunding mortgage, from the inception of the equity receivership to date. For the reasons just given, in fixing the fee of New York counsel in this same connection, no separate allowance will be made to Messrs. Ritchie, Janney, Ober & Williams, since the services performed should be treated as a whole, the fee allowed to New York counsel having been made sufficiently large to enable them to pay such proportional part to their local counsel as may be appropriate.

The requested allowance for disbursements and expenses in the amount of $87.-91 is granted.

■ Venable, Baetjer & Howard. These attorneys have asked for a total of $75,-000, consisting of (1) $40,000 as counsel for the protective committee for the holders of the 5 per cent. first and refunding mortgage bonds of the debtor company throughout the entire proceedings; and (2) $35,-000 as counsel for the reorganization managers appointed under the 77B proceedings. Allowance for an aggregate of disbursements and expenses in connection with the same of $11,860.07 is also asked. No prior allowances have been made to this firm in any of the proceedings involving the debtor corporation.

While prima facie very large, a total allowance of $65,000, that is $10,000 less than requested, is believed to be reasonable and proper under all of the circumstances and, therefore, will be granted. This firm of attorneys did unquestionably the bulk of the legal work incident to the adjustment of the many and complicated differences between the conflicting bondholders, as well as incident to the manifold problems that arose in connection with the preparation of, and the securing of assents to, the plan of reorganization which was finally confirmed and became effective. The court will not attempt to divide the allowance between the two

pieces of work, since they were so inter-related.

The disbursements and expenses will be allowed as requested. This large item represents the major portion of the printing and other expenses incidental to the work in hand, which was unavoidably very extensive.

■ Marbury, Gosnell & Williams. This firm has applied for $25,000 for services rendered to the protective committee for the holders of the debtor company's 4½ per cent. refunding mortgage bonds, from almost the inception of the equity receivership proceedings to date, their services being very comparable to, although not so extensive or intensive as, the work of Messrs. Venable, Baetjer & Howard, just analyzed. Accordingly, the requested fee is believed to be reasonable and proper under the circumstances and will be allowed. No prior allowances have been paid to this firm in any part of this proceeding.

While no allowances have been requested by the receivers or trustees in addition to the salaries which they were currently paid while the debtor company was under the jurisdiction of the court, for comparative purposes and as confirmatory of the relative fairness of the allowances just fixed with respect to counsel who performed the bulk of legal services throughout the entire proceeding, reference to the salaries of the receivers and trustees is believed to be appropriate. These salaries have been as follows: To the three original receivers, Messrs. Robert C. Hill, Frank R. Lyon, and Howell Fisher, $2,500, $1,833, and $750 per month, respectively (Mr. Hill having been chairman of the board of the company at a salary just prior to receivership of $3,968.75 per month). Mr. Hill also received, and continued to receive throughout the receivership and subsequent proceedings under section 77B in this court, $300 additional per month from the Cumberland & Pennsylvania Railroad Company, a subsidiary. Mr. Lyon died on the 13th day of July, 1933, and the services of Mr. Fisher were discontinued on July 14, 1934. On the 14th day of July, 1934, Mr. Iredell Iglehart and Mr. L. S. Zimmerman were appointed co-trustees with Mr. Hill and were paid on the basis of $1,500 each monthly, until Mr. Iglehart's death on the 15th day of August, 1934. Mr. Hill's salary remained at $2,500 per month throughout the entire proceeding. Messrs. Hill and Zimmerman continued as trustees until the conclusion of the proceedings in November, 1935.

These various salaries were adjusted by the court after careful study with relation to the relative extent and difficulty of the work required to be performed by the individuals. Subsections (c)(7) and (c)(9) of section 77B of the Bankruptcy Act are interpreted as not applying to the salaries thus paid to receivers and trustees, who performed the current administrative duties of the debtor company in substitution of the president or other directing head of the company. Therefore, and for the further reason, as already explained, that none of the receivers or trustees has sought compensation in addition to their regular monthly salaries, no reference was required to be made to these salaries in the mailed notices to creditors and stockholders or in the notice by publication respecting the various allowances which are the subject of this opinion. Nevertheless, it is, of course, incumbent upon the court to gauge such salaries by the same standard of moderation as opposed to liberality which apply to the other allowances, and, likewise, it is proper that creditors and stockholders of the debtor company, as well as other parties in interest, should have a full disclosure of such salaries.

■ E. A. Bowers. Mr. Bowers has applied for $2,000 for services as counsel for the Bankers Trust Company, trustee, in the original equity ancillary proceeding in the Northern District of West Virginia. This applicant has been paid $500 by the Bankers Trust Company, trustee, for which reimbursement has been applied by the trust company and is herein allowed.

Although this fee has been approved by the District Judge for the Northern District of West Virginia, it is believed that it is too high, and that it should be limited to the $500 already received. Subsection (i) of section 77B of the act (previously quoted) requires that allowances made by order of another court in prior legal proceedings be treated not as conclusive, but only as prima facie, correct. See Callaghan v. Reconstruction Finance Corporation, 56 S.Ct. 519, 80 L.Ed. ——, decided by the Supreme Court, March 2, 1936. So this court (both through Judge

Chesnut and myself) has held in a number of instances. See notably In re Davison Chemical Company (D.C.) 14 F.Supp. 821; In the Matter of Kelly Springfield Tire Company (D.C.) 13 F.Supp. 724. See, also, In re New York Investors, Inc., 79 F.(2d) 179, Id., 79 F.(2d) 182, In re Allied Owners Corporation, 79 F.(2d) 187, decisions of the Circuit Court of Appeals of the Second Circuit.

It is only after mature deliberation that this court goes counter to the views of a court of ancillary jurisdiction in the original equity receivership, in a matter of this kind, because the decision of the judge having the instant jurisdiction should be accorded great weight and should not be departed from unless, when the entire proceeding is considered, the allowance seems clearly unreasonable. However, since the law authorizes and requires the court of primary jurisdiction to act as the final arbiter of such matters, and since the fee in question is believed to be clearly excessive, it must be disallowed.

The requested allowance for disbursements and expenses in connection with these services, amounting to $59.44, is granted.

Robert H. Winn. This attorney has applied for $5,000 for services rendered as counsel for the Guaranty Trust Company, trustee, in the original ancillary proceeding in the Eastern District of Kentucky. Again, although this fee has been approved by the United States District Judge for that District, it is believed to be excessive, and will be reduced to $1000 for reasons similar to those upon which the reduction has been made in the fee requested by Mr. Bowers.

Osman E. Swartz. Mr. Swartz has applied for $1,500 for services similar to those of Mr. Winn, except that they were performed in the Northern District of West Virginia, where, similarly, the District Judge recommended the allowance. For the same reasons heretofore given with respect to the request by Messrs. Bowers and Winn, this fee will be reduced to $500.

The request for allowance covering disbursements and expenses in the amount of $168.46 is granted.

George M. Hoffheimer. Mr. Hoffheimer has applied for $3,000 for services as counsel to the debtor company in the original equity ancillary proceeding in the Northern District of West Virginia. For like reasons heretofore given with respect to allowances requested by Messrs. Bowers, Winn & Swartz, the amount will be reduced to $500.

The request for allowance of disbursements and expenses of $85.77 is granted.

■ Alexander C. Beeson. Mr. Beeson has applied for an allowance of $580.65 for services rendered as coreceiver for a period of less than one month in the original ancillary equity proceeding in the Northern District of West Virginia, and for certain additional work of short duration, and of no complexity incident to the termination of the ancillary receivership. The District Judge for that District originally allowed Mr. Beeson compensation at the rate of $1,000 a month, and he actually received $419.35 for services covering a period of thirteen days. It does not appear to the court that the services of Mr. Beeson at any time justified an allowance on the basis of $1,000 a month, and that what he has already received would appear to be adequate compensation for all services rendered. Accordingly, Mr. Beeson's request is denied.

Reed, Smith, Shaw & McClay. These attorneys are asking for $500 for services as counsel to the Guaranty Trust Company of New York, trustee, in the original ancillary proceedings in the Western District of Pennsylvania. This fee has been approved by the District Judge for the Western District of Pennsylvania, and is believed to be reasonable and proper and will be allowed.

Anthony F. McCue. Mr. McCue has applied for $500 for services rendered as counsel to the petitioning creditors in the original bill for the appointment of receivers in the ancillary proceedings in the Northern District of West Virginia. This allowance, which has been recommended by the District Judge for that District, is believed to be reasonable and proper and will be allowed.

II. *Allowances to Banks:*

We now turn to the requested allowances of the second class, namely, those of the banks, which will be taken up in the order in which the bank claims appear in the notice.

■ Bankers Trust Company. This company has applied for a total of $8,600,

$2,500 representing services rendered as trustee under the debtor's 4½ per cent. refunding mortgage. An allowance of $100 is also sought for Mr. J. Garfield Houston, as attorney for the company in connection with legal services rendered in connection with the property subject to this mortgage in the Western District of Pennsylvania. The latter is believed to be reasonable and proper and will be allowed. The item of $2,500 to the company proper must be considered in the light of the balance of the company's application, namely, that for $6,000 for services rendered in the original equity proceeding. It is proper to treat the requests as one single item, and when so treated, it is believed that a total of $3,600 is adequate and proper.

The requested allowance for disbursements and expenses of the Bankers Trust Company in this connection, in the amount of $2,113.86, is granted.

Guaranty Trust Company of New York. This company has applied for $35,000 for services as trustee under the debtor company's 5 per cent. first and refunding mortgage, rendered throughout the entire equity receivership and the reorganization proceedings.

The reasonableness of this item may best be determined in relation to what has been found to be reasonable and proper as an allowance to Messrs. Davis, Polk, Wardwell, Gardiner & Reed, who acted as counsel to the Guaranty Trust Company in connection with the same matters. As has been seen, that law firm has requested $50,000 which has been reduced to $18,000 (with possible allowance to local counsel included). A proportionate reduction is, therefore, believed to be necessary in the claim of the trust company itself, and, accordingly, the allowance is fixed at $12,500.

The requested allowance for disbursements and expenses of the trust company in the amount of $2,056.05 is granted; as is also the requested amount of $11,193.89 representing the trust company's services and disbursements as depositary for the protective committee for the holders of the 5 per cent. first and refunding mortgage bonds of the debtor company. This latter item has been certified by the trustees of the debtor company as having been computed on the standard rate customary at the present time in New York for such services, and as being reasonable.

Old Colony Trust Company of Boston. This company has requested an allowance of $4,406.68 for services and disbursements as depositary for the protective committee representing holders of the 5 per cent. first and refunding mortgage bonds of the debtor company. This item likewise has been certified by the trustees as having been computed on the basis customary at the present time for such depositary services in Boston, and as being reasonable. It is, therefore, allowed.

Baltimore National Bank. This institution has requested an allowance in the amount of $5,655.87 for similar services as a depositary, rendered to the same protective committee last mentioned, and for the same reasons the amount will be allowed. An additional amount of $6,257.46 has been requested for services and disbursements as agent for the reorganization managers. This likewise has been certified by the trustees as being upon the standard basis of current allowances for such services and as being reasonable, and will, therefore, be granted.

Safe Deposit & Trust Company of Baltimore. This institution has made application for the allowance of $4,032.44 for services, disbursements, and expenses as depositary for the protective committee for the holders of the 4½ per cent. refunding mortgage bonds of the debtor company. To this, the trustees have made similar certification, and it will be allowed.

Approval in the several instances, just considered, of the local standard rates is not to be taken as an acceptance of their reasonableness in all cases. When the number of bonds serviced becomes very large, adherence to such rates might not be justified.

Finally, we come to requests falling within the third class, namely, those to committees and reorganization managers.

III. *Allowances to Committees and Reorganization Managers:*

Protective Committee Representing Holders of $18,733,000 First and Refunding Mortgage Bonds of the Debtor Company. This committee, which consists of Mr. Howard Bruce, of Baltimore, chairman; Mr. Acosta Nichols, of Spencer Trask & Co., of New York; Mr. Bertram Cutler, representing the Rockefeller inter-

ests; Mr. Frederick H. Ecker, representing the Metropolitan Life Insurance Company; Mr. George C. Cutler, representing the Guaranty Trust Company, New York; Mr. J. Edward Johnston, of Baltimore, and Mr. S. P. Shaw, Jr., representing Old Colony Trust Company, Boston, has asked for total compensation to its various members in the sum of $45,000—$20,000 to Mr. Bruce, chairman, and $5,000 to each of the remaining six members except Mr. George C. Cutler, who requests no allowance; and an additional sum of $2,500 to Mr. Edwin W. Poe, of Baltimore, who acted as the committee's secretary for the past year and a half.

█ A careful investigation of the activities of this committee convinces the court that with the exception of Mr. Bruce, its chairman, the work done by the committee members should not properly be compensated for in the present proceedings. The other members of the committee were apparently appointed because of the considerable amount of bonds which their firms or institutions held or in the distribution and sale of which, they had participated. Presumably, they, or their own nominees, would have undertaken the same duties as part of their regular, official obligation to their principals and clients even if all hope of additional reward directly through the court had been initially denied, and, therefore, these duties may be treated as having been largely, if not entirely, included as part of the work for which they received their salaries or share of firm income, doubtless large. Thus, to make any allowance to them now out of the company's assets would be in the nature of an honorarium, and contrary to the letter and spirit of the law which demands economy of administration. The court is not unmindful of ꞏthe argument that has been stressed in favor of these allowances, namely, that if men of established reputation and influence in the business world are not compensated for services of this kind, they will be reluctant, if not unwilling, to serve, with the result that the personnel of protective committees will decline in character and influence, which in turn will result in inability to obtain assents to proper plans of reorganization without at least much greater difficulty, and expense incident to brokerage fees, which in the present case have been avoided. Also, that, assuming such persons would, by reason of their previously acquired interest, directly or indirectly, in the securities of the debtor company, have been impelled to serve in any event whether additionally compensated or not, the benefit of their services has not been confined to those interests which they might be said to represent but has been enjoyed gratuitously and thereby unfairly, by all other security holders represented by the particular committee. In reply, it is sufficient to say, we think, that while such arguments may, in some cases, be very potent, they are not in the present instance, for the reason that the committee members in question have performed little more than nominal services.

█ On the other hand, it appears that Mr. Bruce did not own or represent, directly ꞏor indirectly, any of the bonds. Also, he appears to have borne the brunt of the work incident to bringing about a settlement of the differences between the conflicting mortgage interests, and resolving the whole matter into such shape as led to a confirmation of the ultimate plan. Therefore, he is entitled to moderate compensation for these services. However, $20,000 to him would seem to be excessive. The amount will be fixed at $16,000, which includes compensation for similar services as chairman of the reorganization managers, hereinafter referred to. No allowance will be made for the aforegoing reasons to any of the other members of this committee.

The requested allowance of $2,500 to Mr. Poe, secretary to the committee, is believed to be reasonable and proper, and is granted.

The committee has also asked for the allowance for disbursements and expenses in the sum of $17,581.68. This has been approved by the trustees and is believed to be reasonable, and will, therefore, be granted, because it all represents actual outlay for expenses reasonably incurred.

[18] Protective Committee Representing Holders of $3,398,000 Refunding Mortgage 4½ per cent. Bonds of the Debtor Company. This committee was composed of the following gentlemen: The late Joseph B. Kirby, president, Safe Deposit & Trust Company of Baltimore, chairman; Edwin W. Levering, Jr., vice president, U. S. Fidelity & Guaranty Company of Baltimore; Douglas Gorman, president, Cum-

berland Coal Company; and John J. Rudolph, of Iselin & Co., of New York. This committee has requested for itself a total of $11,000, including $5,000 to the estate of its chairman, and $2,000 to each of the remaining members.

Mr. Kirby appears to have done work commensurate with that of Mr. Bruce, chairman of the other protective committee, although the work of Mr. Kirby's committee was not as extensive. Also, Mr. Gorman appears to have been placed upon the committee, not because of any bond-holdings, but because of his knowledge of the coal industry. Similarly, the other two members of the committee, Messrs. Levering and Rudolph, acted in an independent capacity. Accordingly, the allowances as requested to each member of this committee will be granted, because they all are found to have done a considerable amount of important work, except that the allowance to the estate of Mr. Kirby is reduced to $3,500 which is believed to be in proper proportion to the allowances to the other members of this committee, and to Mr. Bruce, chairman of the other protective committee.

The committee has also requested an allowance for disbursements and expenses in the sum of $9,300.57, which includes $5,700 compensation paid to Mr. Thomas Butler, secretary to the committee. The amount of these payments, exclusive of what was paid to Mr. Butler, namely $3,600.57, is found to be reasonable, and is, therefore, allowed. The payments to Mr. Butler were on the basis of $150 a month for thirty-eight months. For the first two years, Mr. Butler's work appears to have justified payment on this basis. However, for the remaining fourteen months, the work was considerably less. Therefore, payment for this period on the basis of something less than one-half of the former salary would seem to be adequate. Thus, total compensation of $4,500 will be allowed to Mr. Butler in these proceedings, instead of $5,700, making the total allowed on account of disbursements and expenses $8,100.57 in place of $9,300.-57.

Reorganization Managers. The reorganization managers, consisting of Howard Bruce, chairman, Acosta Nichols, and the late John J. Nelligan, chairman of the board of Safe Deposit & Trust Company of Baltimore (succeeded by Mr. George C. Cutler who, however, has not requested any allowance as one of the reorganization managers) have requested allowances in the aggregate sum of $17,500, with a request for an additional $5,000 to their secretary, Mr. Edwin W. Poe.

Since Mr. Bruce acted in two capacities, to wit, as chairman of both the protective committee of the 5 per cent. bonds and as chairman of the reorganization managers, and since a large portion of the work of the two bodies intermingled and over-lapped, it is proper to treat his compensation as one item for both pieces of work treated as a whole. This has been done in allowing Mr. Bruce compensation as chairman of the protective committee, and nothing additional will therefore be allowed to him as chairman of the reorganization managers. Mr. Acosta Nichols is asking for an allowance as one of the reorganization managers of $5,000. For reasons heretofore given, Mr. Nichols' request for a similar allowance as a member of the protective committee representing holders of the 5 per cent. first and refunding mortgage bonds of the debtor was denied. However, those reasons are not applicable, at least with the same force, with respect to his work devoted primarily to the details of the reorganization plan, as finally proposed and consummated. Therefore, while the requested amount, $5,000, for these latter services is believed to be high, Mr. Nichols will be allowed $2,000 for these services. The same applies to the estate of Mr. Nelligan, and his estate will be allowed $2,000.

With respect to Mr. Poe, who acted as secretary to the reorganization managers, his services to both the protective committee and the reorganization managers were of much shorter duration than were the services of Mr. Butler as secretary to the other protective committee. However, he is believed to be entitled to something in addition to the $2,500 hereinbefore allowed to him as secretary to the protective committee, but not an amount as great, to wit, $5,000, as is requested. Accordingly, for these services Mr. Poe will be allowed $1,-500, in addition to the $2,500 heretofore allowed him.

In addition, the reorganization managers have requested an allowance of $572.-29 covering disbursements and expenses

which are found to be reasonable, and will be granted.

There is annexed hereto a summary of the amounts requested and the amounts al-lowed, classified in the same manner as in this opinion.

An order will be signed in accordance with this opinion.

## I. Attorneys' Fees.

| Name | Fee Requested | Fee Allowed | Reimburse-ments & Ex-penses Re-quested | Reimburse-ments & Ex-penses Al-lowed |
|---|---|---|---|---|
| Semmes, Bowen & Semmes | $ 2,000.00 | $ 2,000.00 | $ 204.29 | $ 204.29 |
| Milbank, Tweed, Hope & Webb | 12,500.00 | 8,000.00 | 230.51 | 230.51 |
| Henry C. Hall | 15,950.00 | 12,000.00 | 1,220.30 | 1,220.30 |
| Debevoise, Stevenson & Plimpton | 22,000.00 | 15,000.00 | 1,436.80 | 1,436.80 |
| Parker, Carey & Doub | 375.00 | 375.00 | ——— | ——— |
| James Carey 3rd & George Doub | 1,500.00 | 750.00 | 151.50 | 151.50 |
| White & Case | 25,000.00 | 12,000.00 | 66.39 | 66.39 |
| Cook & Markell | 5,000.00 | ——— | 66.98 | 66.98 |
| Davis, Polk, Wardwell, Gardiner & Reed | 50,000.00 | 18,000.00 | ——— | ——— |
| Ritchie, Janney, Ober & Williams | 5,000.00 | ——— | 87.91 | 87.91 |
| Venable, Baetjer & Howard | 75,000.00 | 65,000.00 | 11,860.07 | 11,860.07 |
| Marbury, Gosnell & Williams | 25,000.00 | 25,000.00 | ——— | ——— |
| E. A. Bowers | 2,000.00 | 500.00 | 59.44 | 59.44 |
| Robert H. Winn | 5,000.00 | 1,000.00 | ——— | ——— |
| Osman E. Swartz | 1,500.00 | 500.00 | 168.46 | 168.46 |
| George M. Hoffheimer | 3,000.00 | 500.00 | 85.77 | 85.77 |
| Alexander C. Beeson | 580.65 | ——— | ——— | ——— |
| Reed, Smith, Shaw & McClay | 500.00 | 500.00 | ——— | ——— |
| Anthony F. McCue | 500.00 | 500.00 | ——— | ——— |

## II. Allowances to Banks.

| Name | Fee Requested | Fee Allowed | Reimbursements Requested | Reimbursements Allowed |
|---|---|---|---|---|
| Bankers Trust Co. | $ 8,600.00 | 3,600.00 | 2,113.86 | 2,113.86 |
| Guaranty Tr. Co. of New York | 46,193.89 | 23,693.89 | 2,056.05 | 2,056.05 |
| Old Colony Trust Co. of Boston | 4,406.68 | 4,406.68 | ——— | ——— |
| Baltimore National Bank | 11,913.33 | 11,913.33 | ——— | ——— |
| Safe Dep. & Tr. Co. of Balto. | 4,032.44 | 4,032.44 | ——— | ——— |

## III. Allowances to Committees and Reorganization Managers.

| Name | Fee Requested | Fee Allowed | Reimbursements Requested | Reimbursements Allowed |
|---|---|---|---|---|
| Protective Com. representing holders of $13,733,000 1st & Refunding Mtg. Bonds | $ 47,500.00 | $ 18,500.00 | $17,581.68 | $17,581.68 |
| Protective Com. representing $3,398,000 Refunding Mtg. 4½% Bonds | 11,000.00 | 9,500.00 | 9,300.57 | 8,100.57 |
| Reorganization Managers | 22,500.00 | 5,500.00 | 572.29 | 572.29 |
| Totals | $408,551.99 | $242,776.34 | $47,262.87 | $46,062.87 |

## Summary.

| | Requested | Allowed | Reimbursements Requested | Reimbursements Allowed |
|---|---|---|---|---|
| I. Attorneys' Fees | $252,405.65 | $161,625.00 | $15,638.42 | $15,638.42 |
| II. Banks | 75,146.34 | 47,646.34 | 4,169.91 | 4,169.91 |
| III. Committees & Reorganization Managers | 81,000.00 | 33,500.00 | 27,454.54 | 26,254.54 |
| Totals | $408,551.99 | $242,771.34 | $47,262.87 | $46,062.87 |