## In re ALLEGHANY CORPORATION.

### No. 8032.

District Court, D. Maryland.

Aug. 8, 1936.

Chester Bordeau, of White & Case, of New York City, for Trust Company.

George Weems Williams, of Marbury, Gosnell & Williams, of Baltimore, Md., for Alleghany Corporation.

CHESNUT, District Judge.

The matter now before the court in the above entitled reorganization case under 77B of the Bankruptcy Act (11 U.S.C.A. § 207), is the determination of reasonable compensation to the New York Trust Company as an allowance for services in acting as agent depositary of the Alleghany Corporation in connection with its plan of reorganization confirmed by this court on December 29, 1934, which was affirmed on appeal under the title of Campbell v. Alleghany Corporation (C.C.A.) 75 F.(2d) 947. The present matter is the only remaining "unfinished business" in this reorganization.

Shortly after the reorganization was consummated various petitions for allowance by counsel and others were presented and passed on at the time. The bill of the New York Trust Company as agent depositary was then presented but was not acted on because the amount of the bill seemed excessive. Leave, however, was granted to present the matter later on for further consideration and submission of testimony in support of the bill, if desired. In accordance therewith on May 21, 1936, the New York Trust Company filed a formal petition in the case reciting the services performed, annexing an itemized bill and other explanatory documents, and asking for allowance of the bill as presented. The total amount of the bill is for services in the amount of $41,670.67 and in addition thereto reimbursement for disbursements incurred in the amount of $6,371.66. Thereafter renewed notices for the hearing of the claim of this Company were

given by mail to the parties or their counsel of record and by published advertisement, for a hearing on July 31, 1936. On that date the hearing was held and proof made of the notices given. No creditor or other party in interest appeared in opposition to the petition, and it appears that the Alleghany Corporation itself had, by action of its board of directors, approved the bill as rendered. Elaborate testimony was submitted in support of the bill and has been stenographically reported, consisting of 233 typewritten pages covering the oral testimony of nine witnesses, together with numerous exhibits. After extended consideration of the testimony I am still of the opinion that the bill as rendered is excessive in amount.

It is a rather common feature of practice in regard to these petitions for allowance under 77B that the court has to pass on the matter largely in an ex parte way, and without the advantage of opposition or discussion from other parties in interest. This is probably due to the fact that the securities involved are widely held and the amount of the allowance is not sufficient to materially affect the interests of any one security holder. Of course it may also be true that in particular cases allowances requested are not deemed sufficiently large to warrant objection. But however this may be, the duty is imposed upon the court by statute to consider the reasonableness of the charge, even in the absence of active opposition thereto. See In re Davison Chemical Company (D.C.) 14 F. Supp. 821, 826.

The nature of the reorganization in this case was this. The Alleghany Corporation had outstanding a collaterally secured issue of $24,532,000 5% bonds. It was unable to pay the currently accruing interest thereon. It thereupon proposed to the bondholders their surrender of five years' coupons and acceptance in exchange therefor of "prior preferred convertible stock of the corporation." This proposal was first made as of March 15, 1934, before the passage of the Act of June 7, 1934, c. 424, 48 Stat. 912, 11 U.S.C.A. § 207. A substantial amount of the bonds had been deposited in evidence of acceptance of the plan prior to June 7, 1934, but thereafter the corporation determined it would be advisable to complete the proceeding under the new Act. On November 28, 1934, when $17,218,000 of the bonds had been deposited, the corporation filed its petition for re-organization in this court and after further proceedings in accordance with the statute, the plan was confirmed, and on appeal the order was affirmed.

Co-incidentally with the original submission of the plan, the New York Trust Company was appointed agent depositary by the Alleghany Corporation for the purpose of receiving and holding the securities, and on consummation of the plan, returning them to the depositors together with the preferred stock in lieu of the five years' coupons to be paid therefrom. A letter of instructions was given to the Trust Company outlining its duties in the matter and particularly providing that it should not be liable for errors of judgment, mistake of fact or law of itself or agents, except for its own individual wilful default; and also providing that it should receive reasonable compensation for its services. After filing the proceeding in this court an order was passed continuing the services of the Trust Company as agent depositary.

The nature of the services to be performed by the Trust Company, although dealing with a bond issue of very large par value, was in substance comparatively simple, although, of course, naturally involving a high degree of care in dealing with negotiable securities and necessarily including a very large amount of detailed bookkeeping and correspondence. The services to be performed included the following: (1) receiving the bonds in proper negotiable form; (2) issuance of certificates of deposit therefor; (3) the safe custody of the bonds while on deposit; (4) maintaining ledger accounts for depositors who desired to and did make transfers of their negotiable certificates of deposit; (5) cutting the coupons from the bonds; (6) receiving the appropriate amount of prior preference stock and (7) distributing to depositors the new stock and the old bonds, the latter stamped with appropriate legend.

An analysis of the itemized bill rendered by the Trust Company for these services in the amount of $41,670.67 shows that charges have been made at the following rates:

1. For receiving each of 24,532 bonds (of the par value of $1,000 each) 50¢ per bond;

2. issuance of certificates of deposit (one for each $1,000 bond deposited) 25¢ per certificate;

3. delivery of stamped bonds at $\frac{1}{20}$ of 1% of par amount thereof (approximately equivalent to 50¢ per bond);

4. retiring certificates of deposit and cancellation of same at 15¢ each.

Separate smaller charges are also made for (a) maintaining certain items in suspense account pending compliance with requirements, $2.00 per item; (b) custody of securities held for a period exceeding the initial period of three months $\frac{1}{40}$ of 1% per annum on the par value of the bonds; (c) maintenance of 2523 depositors' accounts at 30¢ each; (d) detaching and cancelling 219,372 coupons at $.004 per coupon; (e) delivery of 109,686 shares of prior preference stock at 1¢ per share; (f) a separate charge of $3,505.49 for administration of account and miscellaneous incidental services, on the basis of 10% of other items of the bill. And to this is added the disbursements of $6,371.66 consisting principally of cost of printing certificates of deposit, notices to certificate holders and circular letters, and postage charges, premiums for insurance on securities in transit, and fee of counsel for professional advice.

In considering the reasonableness of this bill it is first to be observed that intrinsically it seems very large for only one item in the whole reorganization expense, which it is clearly the policy of the law should be economical and moderate. In the particular case the amount of this bill substantially exceeds the aggregate of all other allowances made by the court, including counsel fees. On the other hand, it is equally clear that the Trust Company is entitled to reasonable compensation both under its contractual arrangement made with the Alleghany Corporation at the outset, and under the terms of the statute. And it is apparent to any one familiar with the functional operation of a well organized reorganization trust department of a trust company, and as very fully detailed in the evidence in this case, that the services of an agent depositary in a matter of this kind are necessary and valuable, and the proper performance of its duties necessarily involves a very large volume of paper work with very extended bookkeeping, together with meticulous care to avoid mistakes in the receipt, safe keeping and delivery of securities and the maintenance of appropriate bookkeeping incidental thereto.

It will be observed that the bill as rendered does not make a lump sum charge for the services as a whole, but is built up in detail on the basis of separate itemized charges for nearly each step in the handling of the numerous papers. And it is further to be noted that this itemized statement makes a charge at a flat fixed sum for practically each paper handled, and each step in the handling of each paper. The result is, as the number of papers handled was very large (said to approximate nearly 100,000 pieces) the total charge at the flat rate per piece of paper comes to a very large sum. And in the particular case the total number of separate papers was much increased by the practice of issuing a separate certificate of deposit for each $1,000 bond although many depositors deposited a much larger amount of bonds. Thus it appears in the testimony that on an average each depositor held approximately $10,000 par value of bonds, and the Trust Company maintained only 2,523 accounts of registered holders of certificates of deposit. Still again it is to be observed that a flat rate for each bond received or paper of the same kind handled, may be entirely reasonable when applied to a small or average volume of securities, but may be quite excessive when applied to such a large volume as was handled in this case. While care must of course be exercised in each step of the process, it ought to be obvious that a very large volume of precisely similar transactions can fairly be performed for a smaller compensation per piece than for a much smaller number. The bill as rendered, however, seems to give no adequate effect to this consideration.

 .The testimony in support of the bill as rendered may be summarized as including the following: (1) The testimony of representatives of the petitioner and other New York banks and trust companies, (including the Bankers Trust Co.; the Chase National Bank; Manufacturers Trust Co., and Guaranty Trust Co.) that the bill as rendered is reasonable and in accordance with their customary charges; (2) that in aggregate amount it is substantially in accordance with the formula for such charges recently adopted by the Corporate Fiduciaries Association of New York City. In addition thereto the New York Trust Company submitted a cost analysis prepared by Haskins & Sells, well-known certified public accountants, purporting to show that the actual cost of performing the services rendered by the New York Trust Company was $28,107.46. It

will be noted that the bill of $41,670.67 as rendered (exclusive of disbursements) carries in addition thereto a net profit of nearly 50%.

With respect to this testimony it is to be said that it comes ex parte, and without cross-examination, from interested parties, although it is doubtless given in entire good faith, and is entitled to careful consideration. Nevertheless a concrete formula or scale of charges adopted in the trade is obviously not necessarily conclusive of what is a reasonable charge for the services, which must be determined by the court. Along with the testimony there has been handed to me a printed "Memorandum submitted to the United States District Court for the Southern District of New York by the Corporate Fiduciaries Association of New York City" which contains "a discussion of the services rendered by fiduciary institutions as depositary in connection with reorganization and particularly in relation to the basis of charge for such services considered standard in New York City."

■ This affords a very helpful discussion and brings to the attention of those not already familiar with the subject matter, in somewhat meticulous detail, the very extensive bookkeeping and clerical services, as well as more important responsibility, involved in such services. The particular formula for the scale of charges therein contained varies somewhat in detail from that applied to the instant case by the petitioner here, but it is said the result would be substantially the same. However, as I understand it, the formula adopted by the Corporate Fiduciaries Association of New York City is put forward rather as a guide than as a concrete measure for services in every case. Reorganizations necessarily greatly vary with respect to the amount and number and complexity of handling securities. A reasonable charge for any particular case must depend very largely upon these variable elements. Where the securities are widely scattered and held in small amounts by very numerous persons who are desirous of actively dealing with them in the market pending the reorganization, it is obvious that the extent of the services required with respect to bookkeeping will much exceed some other case where the par value of securities handled may be much greater but held by a comparatively few holders who in the main do not desire to sell or pledge their securities

pending the consummation of the reorganization plan.

■ In the memorandum referred to submitted in support of the particular schedule, there is reference to the scale of allowances for similar services made by District Judge Coxe of the Southern District of New York in Re Paramount-Publix Corporation (D.C.) 12 F.Supp. 823, 832. In that case it appears that the agent depositary submitted a bill amounting to $73,284.16, based on a somewhat similar but apparently not identical formula for itemized separate charges. The rates were for most of the items regarded as excessive and the total of the bill was reduced to $39,398.96. In the memorandum referred to it is said that the rates allowed in that particular case would not cover the actual cost of the services to the agent depositary in the average case. I agree with Judge Coxe's view that "while the need of a depositary to receive the deposits, issue certificates, maintain the safe custody, and perform the incidental work in handling securities is recognized, and the charges made are said to be standard, the court will not be bound by any fixed scale employed by banks generally for similar services." Whether the particular scale of charges amounts to reasonable compensation in any particular case depends upon its own facts and circumstances. In the instant case I am of the opinion that neither the scale applied by the New York Trust Company nor the formula adopted by the Corporate Fiduciaries Association of New York is fairly applicable as the measure of reasonable compensation here.

Perhaps more impressive in this case is the testimony with regard to the cost accounting for this transaction. This requires some analysis of the figures submitted by Haskins & Sells. The accounting conclusion that the cost of the work is $28,107.86 seems to be reached by approved accounting principles but is necessarily very largely based on an estimate only of time required for this particular service which, in turn, is based not on any definite accounting figures taken from books of actual expense, but on an estimate of the time required as made in the reorganization department of the New York Trust Company. In reaching their figures Haskins & Sells took from the Trust Company's books all items of expense directly allocated to the reorganization department for a particular period, (thirteen months ended March 31,

1935) which was determined to be $71,398.60. To this was added administrative overhead in the amount of $19,669.25, being a proportion of general expenses of the Trust Company not directly allocable to the reorganization department. The total expense of this department for the period is thus put at $91,067.85. These accountants then assume (based on the time estimate for the particular case just mentioned) that 20.38% of this total expense was fairly attributable to services for the particular job. Applying this percentage to the total expense, including overhead, it results that for the thirteen months' period the expense was $18,559.62, up to March 31, 1935. It was then further estimated that the amount of securities actually handled up to that time was only 66.03% of the total amount of securities that the Trust Company would be required to handle for the final completion of the whole matter. Therefore there is added to the total expense the estimated percentage of services not then completed (33.97%) amounting to $9,548.24, producing a total expense by this cost analysis of $28,107.86.

It will be apparent that the final figure thus obtained for expense involves very importantly two uncertain factors which are only estimated. The percentage basis of the particular job to the whole work of the reorganization department of the Trust Company for the particular period (20.38%) would seem to be large intrinsically considered with reference to the probable amount of the whole work of this department in this period, although I do not have the advantage of definite figures in this respect. The estimate of time for the particular work was not based on an actual time computation in doing work for the Alleghany Corporation but is based on a week's analysis of time said to have been spent in the department on similar types of work. This time schedule so prepared included the time required for 31 separate transactions, as for instance 43 seconds to examine a bond received which, applied to 19,943 bonds (handled during the period) provides a total time of 263 hours and 48 minutes, for this item. This time schedule as a whole for the thirteen months' period thus produces the total time for the thirty-one operations, by various clerks or junior officers, of 3,153 hours and fifty minutes. Incidentally it may be observed (from the testimony) that the salaries paid to clerks or junior officers whose time was thus required would not of itself have amounted to as much as $4,000.

Another doubtful factor in the cost analysis is the estimate or assumption that in the named period only 66.03% of the whole required services had been completed. At that time 19,943 $1,000 bonds had been received for deposit and the certificates of deposit issued against them. This was about 80% of the whole bond issue, and it would seem that the importance of the initial receipt of the bonds and issuance of certificates of deposit was greater than the subsequent features of the work. That is to say, in quality and importance the work done up to March 31, 1935, at an estimated cost of $18,559.62 was apparently substantially greater than 66.03% of the whole work. And the remainder still to be performed hardly justified the further charge to expense of so much as $9,548.24, when the work as a whole is viewed as an entity.

These considerations lead me to the conclusion that the cost analysis, by reason of the variable and uncertain factors mentioned, cannot be regarded as certain and definite but only as approximate, and persuasive that the actual expense to the Trust Company was very substantial, but probably not much more than $20,000. But even if the actual expense approximated $28,000, the bill as rendered for $41,670.67 is, I think, clearly excessive, involving as it does a net profit of nearly 50%, especially when this is compared with other testimony in the case to the effect that the average profit of other depositaries for similar work over a five year period was at a much smaller rate, the highest mentioned being that of the Guaranty Trust Company of New York where the figure for net profit was 11%; although it is said that until recently careful consideration has not been given to the loss or profit in the reorganization departments of New York banks and trust companies.

And from other analysis the bill as rendered seems excessive. The total charge including disbursements approximates nearly $2.00 per $1,000 bond, which certainly appears to be at a higher rate than charges for somewhat similar services in other cases which have come to my attention. Then again, in the itemized bill it appears that a separate charge of nearly $1,000 is made for the largely manual service of cutting coupons off the bonds while the testimony shows that the salaries paid

to the junior officers for the time required was less than $100. And on top of all the several charges for handling each paper in each step of the transaction there is added an overriding charge of $3,505.49 for general administration of the account. And to all these charges are added the actual out of pocket disbursements for expenses in the whole transaction amounting to over $6,000.

Emphasis is laid on the responsibility required in the work and possible liability to be incurred in handling negotiable securities. This is, of course, a highly important feature of the services performed and indeed furnishes the reason for the employment of a responsible and well organized trust company as the agent depositary. While this feature of the services should not be belittled it is to be noted as an off-set that it was made a condition that the depositary was not to be liable for mistakes of itself or its agents except for its own individual wilful default. And in practice it is well known, and the testimony in this case shows affirmatively, that nearly every feature of the work is covered by insurance, and insurance premiums for some part of the items of insurance are charged as disbursements in this case, and others are probably absorbed in the general overhead expenses in the cost analysis.

And finally attention must be called to the underlying principle of the statute which requires determination of compensation in this class of cases to be moderate and not liberal. This has been so frequently pointed out in the opinions of this and other courts that it is unnecessary to do more than refer to a few of the recently decided cases here. See In re Consolidation Coal Co. (D.C.) 14 F.Supp. 845; In re Kelly Springfield Tire Co. (D.C.) 13 F.Supp. 724; In re Davison Chemical Co. (D.C.) 14 F.Supp. 821. In the Kelly Springfield Tire Company Case, 13 F.Supp. 724, at page 733, this petitioner, for similar but not so extensive services as agent depositary, was allowed compensation of $10,000 and disbursements of $1,119.74 on account of an aggregate bill presented in the amount of $15,123.50.

In this court, Judge Coleman has recently dealt with a very similar problem in the allowances made to the Safe Deposit and Trust Company of Baltimore and the Mercantile Trust Company of Baltimore as agent depositary for certain securities of the United Railways and Electric Company of Baltimore recently reorganized, in an opinion filed May 27, 1936. In re United Railways & Electric Co. of Baltimore (D.C.) 15 F.Supp. 195, 202. From the testimony of an officer of the Safe Deposit and Trust Company in this case, it appears that the services performed by it in nature and volume were fairly comparable to that of the petitioner in the instant case. The bill rendered by the Safe Deposit and Trust Company was for $31,417.65, but was reduced to $21,893.96. For more accurate comparison, however, it may fairly be noted that the par value and volume of securities deposited with the Safe Deposit and Trust Company was somewhat less than in the case of the Alleghany Corporation, and the number of certificates of deposit issued was apparently much less than in the instant case because the practice was not there adopted of issuing a separate certificate for each $1,000 bond. It was also probable that the transfers of certificates of deposit were less numerous than in the instant case and it was doubtless reasonable to assume that general overhead expenses of the New York Trust Company are probably greater than in Baltimore. Judge Coleman there said:

"'Approval in the several instances, just considered, of the local standard rates is not to be taken as an acceptance of their reasonableness in all cases. When the number of bonds serviced becomes very large, adherence to such rates might not be justified.' Such adherence is not believed to be justified in the present proceeding. The depositaries have explained that it is impossible to present, with any degree of accuracy, figures which will show the actual cost of the services rendered. Assuming this to be true, nevertheless under all the circumstances, the present requests are believed to be too high. Too much emphasis appears to be laid upon the total face value of securities handled rather than upon the number of individual accounts; for obviously, where securities are handled in large lots, certain cost factors must decline."

I think it not inappropriate here to make some general observations, based on this and other cases, in which similar charges have come to my attention. The agent depositary is certainly fairly entitled to be paid as reasonable compensation its actual cost, including expenses of all kinds, and a reasonable profit for its services. It would not be fair to these banks

and trust companies to expect them to render these necessary and valuable services in corporate reorganizations otherwise than on this basis. The difficulty in particular cases in determining reasonable compensation is the impossibility to determine in any very satisfactory way the actual expenses incurred. Nor are the depositaries to be criticized for performing their services in detail in a way that involves possibly a multiplication in handling the number of papers occasioned largely by following a practice and procedure which facilitates market dealing by some depositors in the deposited securities. If the transaction is handled in this form by the depositaries at the request or with the approval of the reorganized corporation for the benefit of certain security holders, it is fairly entitled to be compensated for what it actually does even though a different plan of handling the matter could fairly be devised to minimize the whole work involved. But to carry out the spirit of economy in the administration of these corporate reorganizations, the trustees, bondholders' committees and counsel as well as the corporation itself clearly ought to cooperate with each other and with the depositary in the formulation of some reasonable practicable plan which will materially diminish the volume of clerical work to be performed by the depositary. I am satisfied that a substantial part of the cost of the services in the particular case was due to the practice of issuing separate certificates of deposit for each $1,000 bond so that some of the depositors would be convenienced in market dealings in the securities pending the reorganization. But in many if not most reorganizations, probably the majority of individual depositors do not in fact trade in the securities pending the reorganization. The result is that a material factor in the cost of the service is incurred for the benefit of probably a minority of all the depositors, and is imposed as a whole upon the corporation, and therefore where the corporation is in embarrassed financial circumstances, ultimately on all the security holders, as distinct from the limited number who avail themselves of the particular services requiring active transfers of the certificates of deposit. It would seem equitable and in the interests of economy to the corporation if the special services were required to be paid for not by the corporation but by those depositors who wish to avail themselves thereof. Thus the item of expense involved in actively maintaining separate ledger accounts for the transfer of certificates during the reorganization should more fairly be imposed by separate charge for each transfer on the transferor or transferee, and not upon the corporation. Nor would there seem to be any necessity, looking at the problem of reorganization as a whole, why a separate certificate of deposit should be issued for each bond when a particular depositor holds more than one bond. If the particular depositor desires for his own convenience to have a large separate number of certificates of deposit, the extra charge therefor should be imposed on him rather than on the corporation. And there are doubtless other ways in which the very large expense bills of agent depositaries in these reorganizations could be fairly lessened if care and attention is given to the matter at the outset by the parties in interest.

■ Considering the instant case as a whole, I reach the conclusion that an allowance of $30,000, plus the disbursements of $6,371.66 incurred, will be reasonable compensation in this case to the petitioner.

It is therefore ordered this 8th day of August, 1936, by the District Court of the United States for the District of Maryland, sitting in Bankruptcy, that the Alleghany Corporation is authorized and directed to pay to the New York Trust Company, petitioner in this case, the sum of $36,371.66 as full compensation for and in satisfaction of all services and disbursements heretofore performed by it and agreed to be performed in the future as agent depositary for the Alleghany Corporation in the matter of reorganization herein referred to.