## GROSSMAN v. KRIDEL et al.

### No. 170.

Circuit Court of Appeals, Second Circuit.
June 14, 1937.

George Natanson, of New York City, for appellant.

Rosenberg, Goldmark & Colin, of New York City (Milton M. Bergerman and Herman Jervis, both of New York City, of counsel), for appellees.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from an order in a reörganization proceeding under section 77B, Bankr.Act, 11 U.S.C.A. § 207, which cut down an allowance made to the appellant, Grossman, as ancillary receiver appointed in an earlier sequestration suit in New Jersey. On June 13, 1934, the petition for reörganization was filed; the court approved it on June 28th, and appointed a

temporary trustee, made permanent on October 29th. On April 29, 1935, a plan of reörganization was filed which was confirmed on August 1, 1935; and on February 3, 1936, all persons were directed to file their applications for allowances on or before February 28th. A creditors' sequestration suit had been filed in the District Court of New Jersey on December 9, 1931, and Grossman and Kridel were appointed ancillary receivers of the defendant's hotel in Atlantic City; "ancillary" because on the same day another suit had been filed in the Southern District of New York against the same defendant. The receivers continued to manage the Atlantic City Hotel until June 28, 1934, the date of the approval of the petition herein; and on October 5, 1934, Judge Avis, who had already made an ad interim allowance to Grossman of $11,500, made him a further final allowance of $9,500, after a hearing and contest. In accordance with the rule of February 3, 1936, Grossman filed his claim in this proceeding on February 7, 1936, without any supporting petition stating the extent or quality of his services, but annexing a copy of Judge Avis's order. A bondholders' committee presented a petition in opposition to this allowance, alleging that the sequestration suit in New Jersey had been the result of a "conspiracy," but saying nothing about the extent of Grossman's services except that the report of the receivers was "singularly devoid of their activities except that mention is made of the daily conduct of the receivers with the operation of the hotel and of the economies they have effected since the hotel has been under their aegis." It also alleged that Judge Avis had not been told that the sequestration suit was "a scheme to hold on unlawfully to the management of the property of defrauded bondholders." Grossman filed an opposing affidavit saying that he had for twenty-nine years been in the hotel business in Atlantic City, was secretary of the Hotel Men's Association, vice-president of the Bankers Trust Company, a member of the Water Policy Commission of New Jersey, and had held other positions of trust and confidence, including those of receiver and trustee in the courts. That for the details of his management he referred to the various reports submitted to the New Jersey court; that during the period of his receivership he had taken active charge of the management of the hotel, had been present every day, and in conjunction with his co-receiver,

Kridel, had inaugurated many reforms which resulted in great savings, so that the receivers were able to continue their operation, pay the expenses of the receivership, and enhance the value of the property in spite of the trying conditions of the hotel business in Atlantic City; and of the inability of two adjacent hotels to keep open during the winter. On these papers the judge cut the allowance to $2,000, of which he made $600 payable in cash and $1,400 in such installments as the debtor should determine and only out of its available net income.

We held in Re New York Investors, Inc., 79 F.(2d) 182, and In re Allied Owners Corporation, 79 F.(2d) 187, that under subdivision (i) of section 77B (11 U.S.C.A. § 207 (i) the judge in reörganization might reduce allowances made in earlier sequestration suits or bankruptcy proceedings; thus there is no doubt of the jurisdiction here. But it does not follow that such an allowance has no prima facie validity; or that the party who gets it must at the outset present his case anew, even though in the end the burden of proof be upon him. The subdivision says that "the judge shall make such orders as he may deem equitable * * * for the payment of such reasonable * * * allowances in the prior proceeding as may be fixed by the court appointing said receiver." 11 U.S.C.A. § 207 (i). This language might have two, but so far as we can see only two, meanings: it might mean that the reörganization judge should consider the application de novo and that the applicant must make a case just as he had originally before the equity, or the bankruptcy judge; or it might mean that the earlier order created a presumption of the propriety of the allowance, and should stand unless it were attacked. Of these two it seems to us that the second must be the right one; we cannot conceive that if Congress had meant to sweep aside the first order, it would have used such language; indeed the allowance cannot be raised at all, which precludes that interpretation. The reörganization judge is to make "equitable" orders to pay "reasonable allowances" already "fixed"; it cannot be that these are not to be the basis of his inquiry. We think they are; we think that it is enough for the receiver or other party who has got the award to put it in evidence and rest, and that it then devolves upon some party to the reörganization proceeding, the debtor, the trustee, a creditor, a committee, or perhaps

the judge sua sponte, to put in some proof that the allowance was too high. Preferably that should be done by examining the claimant himself in court. Whether the earlier order creates only a presumption, or whether the opposing party has the burden of proof to satisfy the court as to what was the proper amount, we do not say; it is not likely that that question will often, if ever, be crucial. But the order at the outset establishes the case, and must be overcome. In the case at bar we can find nothing in the opposing petition specific enough to raise an issue. The receiver was not a party to the supposed "conspiracy," and was entitled to be paid whether one existed or not; nor was there any tangible statement about his services on which the judge could act. While the office of a presumption is only to compel the other party to proceed, he cannot stand on gossamer; there must be something probative, at least to a minimum. Of course we cannot decide the case upon what rested merely in gremio; the issue was controversial; all the evidence must at some time have been publicly produced and must be preserved. We have again and again said that we will pay no attention to informal colloquy between court and counsel, even if taken down.

The second objection is that the allowance whatever its amount, should have been paid wholly in cash. There can be no doubt that the statute so directs; subdivision (b) (3) of section 77B, 11 U.S.C.A. § 207 (b) (3), reads that the plan "shall provide for the payment in cash of all costs of administration and other allowances made by the court" except those provided in subdivision (c) (9), 11 U.S.C.A. § 207 (c) (9), which are not here relevant; unless a plan provides enough cash to pay these charges it cannot be confirmed. The appellees seek to avoid this requirement by saying that the provision appeared in the plan which was confirmed on August 1, 1935, and that Grossman should have appealed from that order, if he had a grievance. But the plan did not positively declare that allowances should not be paid in cash; only that they should be so paid "to the extent that funds are available after preserving an adequate working capital fund for each property." If Grossman had appealed, he would have been met at once with the objection that he must not cry out before he was hurt; that it did not yet appear that the cash reserve would not be enough. Moreover, the whole matter of allowances was deliberately left open for six months after confirmation, and no court would have taken up any question in advance; the only time when both their size and their method of payment could be considered was on February 28, 1936, the return day of the rule.

The order is reversed and cause remanded for further proceedings not inconsistent with the foregoing.