**In re NEW ERA HOUSING CORPORATION.**

**Appeal of FORD et al.**

**No. 7446.**

Circuit Court of Appeals, Third Circuit.

Jan. 28, 1941.

Rehearing Denied Feb. 24, 1941.

L. Stanley Ford, of Hackensack, N. J. and Morris M. Ravin, of Newark, N.J., for appellants.

Thomas McNulty and Milton, McNulty & Augelli, all of Jersey City, N. J., for appellee.

Before BIGGS, MARIS, and GOODRICH, Circuit Judges.

BIGGS, Circuit Judge.

The debtor's subsidiary corporations, Riverview Lawns, Inc. and Saddle River Homesteads, Inc., gave mortgages to Ninth Federal Savings and Loan Association on twenty separate parcels of improved real estate. The debtor itself was engaged in conducting a real estate development. The two subsidiary corporations also owned other lands which were largely unimproved and these too were mortgaged to the Association. The building development ran into difficulties. A petition was filed by the debtor pursuant to Section 77B of the Bankruptcy Act, 48 Stat. 912, 11 U.S.C.A. § 207, and trustees were appointed. On June 14, 1937 the debtor filed a plan of reorganization which provided that a new corporation, Twin-Boro Holding Co., Inc., should be created and that the debtor and its subsidiaries should convey their assets, including the properties, to it, and that Twin-Boro should receive and hold these properties free and clear of all liens and encumbrances with the exception of existing bona fide mortgages, taxes due to various municipalities and such liens as should be placed upon the properties pursuant to the plan of reorganization. The unimproved real estate was to be subject to the existing liens and to two new mortgages referred to in the plan as the "trust mortgages". These new mortgages were to total $125,000 and were to serve as security for bonds to be issued by the new company to the unsecured creditors of the debtor.

The plan contained provisions for releasing lots from the liens of the mortgages upon the payment of specified sums. The trust mortgages were to be executed and delivered to trustees to be named by the creditors and approved by the court. The proceeds of these mortgages were to be used by the trustees: First, to pay the expenses of administration; second, for the satisfaction of the bonds issued against the mortgages; and third, for the expenses of the administration of the trust mortgages. The plan also provided that administration expenses and allowances

should be a first lien on all of the property of the new corporation, "* * * prior to any mortgages given by the new corporation, but subject, however, to any bona fide mortgage now on the property of the New Era Housing Corporation and its two subsidiaries, Riverview Lawns, Inc. and Saddle River Homesteads, Inc., and no payment shall be made to General Creditors until the administration expenses and allowances shall have been first paid in full; it being understood that administration expenses and allowances for services rendered in the 77B proceedings shall be paid upon receipt of and out of the first moneys received from releases on account of the two mortgages above mentioned * * *".

The debtor filed an amendment to the plan of reorganization on July 26, 1937, which provided that the debtor should undertake to obtain a "recasting" of all the mortgages on houses held by the Association which were presently owned by the debtor and its subsidiaries and unsold, to the end that all of the mortgages should be in good standing.

The amended plan was confirmed by an order dated August 9, 1937, which in respect to allowances for services rendered by counsel and others provided that the allowances when made should be a first lien on all of the assets of the debtor corporation and of the new corporation and were to be paid as provided in the order of the court. Upon August 23, 1937, allowances of fees were made to the two appellants who were respectively attorney for the trustee and attorney for the debtor and the order granting the allowances provided that the allowances should be a lien upon the assets of the debtor and its subsidiaries and of the new corporation, subject only to bona fide mortgages existing on the assets at the time of the filing of the petition pursuant to Section 77B, and that no disbursements were to be made by the debtor or the new corporation, with the exception of the payment of disbursements and expenses permitted by the order of August 9, 1937, until the allowances were paid. The order of August 23, 1937, further provided that the allowances should constitute a debt of the new corporation and were to be paid by it " * * * as moneys are received by it from any source whatsoever, and it shall at all times be a priority debt of the said corporation, provided, however, that the new corporation may retain up to 50% of

such moneys received by it * * * for the payment of its legitimate running expenses, the balance to be distributed pro rata among those to whom allowances are to be made herein."

The order went on to provide that the sums available for allowances should be paid to the appellant Ravin and by him distributed pro rata among those entitled thereto and designated Ravin and another, as trustees, to receive the trust mortgages.

On August 18, 1937, pursuant to the plan of reorganization, Twin-Boro Holdings Co., Inc., received the assets of the debtor and its subsidiaries, including the properties covered by the twenty mortgages. To enable Twin-Boro to receive unadvanced moneys due on the original mortgages from the Association, Twin-Boro executed to the Association on September 11, 1937, twenty new mortgages similar to the twenty existing mortgages. This was the "recasting" provided for by the amendment to the plan of reorganization. At this point the Association possessed the security of two sets of twenty mortgages upon the respective properties. On March 19, 1938, Twin-Boro conveyed the twenty properties to a subsidiary of the Association, Jeffy Holding Company, Inc., in consideration of the payment of taxes and releases of certain encumbrances upon the properties. At this point the recast mortgages (the second set of twenty) were cancelled and marked satisfied, the original twenty mortgages remaining undisturbed.

Jeffy proceeded to complete the houses upon the twenty premises and sold fifteen of them to different purchasers, the Association upon each sale cancelling the original mortgage (of the twenty) upon the property sold and taking back a purchase money mortgage from the vendee. On December 31, 1938, Jeffy reconveyed the remaining five properties to the Association.

The appellant, Ford, was present when some of these transactions took place or were arranged for and we think that it must be assumed that the appellants had knowledge of all that occurred.

There is no doubt that by March 19, 1938, when Twin-Boro conveyed to Jeffy, the reorganization had collapsed. The court below concluded that at this date there was no equity left in any of the properties held by Twin-Boro when it executed its conveyance to Jeffy.

Upon April 29, 1939, the appellants, alleging that the lien securing their allowances had become senior and paramount by reason of the cancellation of the prior mortgages and that their security was endangered, filed their petition and prayed that the court sequestrate the mortgages held by the Association on all real estate formerly belonging to the debtor, its subsidiaries or Twin-Boro, for the appointment of a receiver to take possession of the mortgages and collect the interest and principal payments when made thereon and to hold them for the satisfaction of the lien of the appellants, and for a writ of execution directing the Marshal to sell the buildings and lands described upon a schedule annexed to the petition. The court issued its rule to show cause upon this petition.

After hearing, the petition was dismissed by the learned trial judge. He concluded that because Ford and Ravin, and indeed all of the persons and parties interested in the reorganization, were aware by March 19, 1938, that the plan of reorganization had collapsed, and also knew that Twin-Boro was conveying the properties to the Association or to its subsidiary, Jeffy, the Association had the right to assume that the lien in favor of the appellants had been abandoned or waived by them and that they would not look to the Association for the payment of the sums due them. The appeal at bar followed.

■ We should conclude that the lien purportedly given to the appellants and those who stand in like position with them was a first and paramount lien upon the properties conveyed by Twin-Boro to Jeffy and is now entitled to security in or payment from the purchase-money mortgages which replaced those properties in the hands of the Association, were it not for the fact that an examination of Section 77 B, sub. b (3), 48 Stat. 913, 11 U.S.C.A. § 207, sub. b(3), convinces us that the court below was without power or authority to impose a lien upon the assets transferred to Twin-Boro by the debtor and its subsidiaries to secure payment in the future of the sums allowed by it to the appellants and those in like position. We reach this conclusion because the section referred to states in part that: "A plan of reorganization within the meaning of this section * * * shall provide for the payment in cash of all costs of administration and other allowances made by the court except that compensation or reimbursement provided for in subdivision (c), clause (9), of this section, may be paid in securities provided for in the plan * * *".[1] Subsection c, clause (9) simply provides that the court may allow reasonable compensation for services rendered and reimbursement for actual and necessary expenses.

■ In the case at bar the appellants and those in like position with them were to be paid by the new corporation "upon receipt of and out of the first moneys received from releases on account of the two mortgages [the trust mortgages] above mentioned" and from moneys as received by the new corporation "from any source whatsoever". The appellants were not "paid" by any securities or evidences of indebtedness issued by the new corporation at the time it commenced its corporate life. The appellants looked for the payment of the sums due them to the success of the reorganization for they could not be paid unless the properties transferred to the new corporation were sold for more than the mortgages upon them. As we have already indicated we think that it was the intention of Congress by that portion of Section 77B, sub. b(3), which we have quoted to make plain that a new corporation emerging from the ashes of a reorganization was not to bear the burden of unpaid reorganization expenses unless these expenses were funded by the issuance of its own securities, whether evidences of indebtedness or stock and thus brought directly into its own corporate setup. In short the payment of the appellants in the manner and upon the terms indicated was not authorized by the statute. It follows that the orders of the court imposing the lien to secure this payment likewise was without authority.

We are confirmed in the conclusion which we have expressed by the definition of the term "securities" contained in Section 77B, sub. b(10), which states that that term includes evidences of indebtedness, either secured or unsecured, stock certificates of beneficial interests therein and certificates of beneficial interests in property. While this definition is not all-inclusive, we think that it makes plain the intention of

[1] Compare Section 216(3) of Chapter 10, 52 Stat. 895, 11 U.S.C.A. § 616(3), which superseded the provisions of Section 77B which we have quoted.

Congress that such allowances as are made in a 77B proceeding must be paid at the time of reorganization either in cash or by the delivery of securities which themselves evidence an indebtedness or obligation of or interest in the reorganized company.[2]

It follows that since those portions of the original orders imposing the lien involved in this case were beyond the power of the court, the subsequent order of the court dismissing the petition which sought the enforcement of the lien was not erroneous.

The order of the District Court therefore is affirmed.

[2] See also Grossman v. Kridel, 2 Cir., 90 F.2d 624, 626.